Electronically Filed
Supreme Court
SCCQ-19-0000156
17-DEC-2020
07:50 AM
Dkt. 71 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

---

DW AINA LE'A DEVELOPMENT, LLC,
Plaintiff-Appellant,

vs.

STATE OF HAWAI'I LAND USE COMMISSION; STATE OF HAWAI'I,
Defendants-Appellees.

---

SCCQ-19-0000156

ORIGINAL PROCEEDING

DECEMBER 17, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ., AND
CIRCUIT JUDGE WONG, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I. INTRODUCTION

The United States Court of Appeals for the Ninth
Circuit has asked us to determine the statute of limitations for
a takings claim brought under the Hawai'i Constitution.  In
response, we hold that the statute of limitations for a
regulatory taking is six years, pursuant to the catch-all

statute of limitations in Hawai'i Revised Statutes (HRS) § 657-1(4).

## II. BACKGROUND

On March 11, 2019, the United States Court of Appeals for the Ninth Circuit certified a question of Hawai'i law to this court pursuant to HRS § 602-5(a)(2) (Supp. 2016) and Hawai'i Rules of Appellate Procedure (HRAP) Rule 13, asking us to resolve the following question:

> What is the applicable statute of limitations for a claim against the State of Hawai'i alleging an unlawful taking of "[p]rivate property . . . for public use without just compensation," Haw. Const. art. 1, § 20?[1]

Parties and amicus curiae advocate three different positions on this question: the State of Hawai'i Land Use Commission and other defendants (collectively LUC) argue that the limitations period is two years;[2] DW Aina Le'a Development,

---

[1] In general, there are two types of takings claims: physical takings and regulatory takings. The first arises "when an actual physical invasion of the landowner's property has occurred." 31 Am. Jur. Proof of Facts 3d 563 § 2 (2020). Conversely, "[a] regulatory taking results when a governmental regulation places such a burdensome restriction on a landowner's use of his property that the government has for all intents and purposes 'taken' the landowner's property." Id. Because DW's state constitutional claim is for a regulatory — rather than a physical — taking, we answer the certified question only as to the statute of limitations for a regulatory taking. Allstate Ins. Co. v. Alamo Rent-A-Car, Inc., 137 F.3d 634, 637 (9th Cir. 1998) ("The court may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties." (quotation marks omitted)).

[2] HRS § 661-5 (2016) states, "Every claim against the State, cognizable under this part, shall be forever barred unless the action is commenced within two years after the claim first accrues[.]"

(continued . . .)

LLC (DW) six years;[3] and amicus curiae Owners' Counsel of America

(OCA) twenty years.[4]

---

HRS § 661-1 (2016) provides:

The several circuit courts of the State and, except as otherwise provided by statute or rule, the several state district courts, subject to appeal as provided by law, shall have original jurisdiction to hear and determine the following matters, and, unless otherwise provided by law, shall determine all questions of fact involved without the intervention of a jury:

> (1) All claims against the State founded upon any statute of the State; upon any rule of an executive department; or upon any contract, expressed or implied, with the State, and all claims which may be referred to any such court by the legislature; provided that no action shall be maintained, nor shall any process issue against the State, based on any contract or any act of any state officer that the officer is not authorized to make or do by the laws of the State, nor upon any other cause of action than as herein set forth; and

> (2) All counterclaims, whether liquidated or unliquidated, or other demands whatsoever on the part of the State against any person making claim against the State under this part.

Alternatively, the statute of limitations could also be two years if a takings claim were held to be a personal injury action. HRS § 657-7 (2016) states, "Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after[.]"

[3]    HRS § 657-1 (2016) states in relevant part:

The following actions shall be commenced within six years next after the cause of action accrued, and not after:

. . .

> (4) Personal actions of any nature whatsoever not specifically covered by the laws of the State.

[4]    HRS § 657-31 (2016) states, "No person shall commence an action to recover possession of any lands, or make any entry thereon, unless within twenty years after the right to bring the action first accrued."

The following facts are taken from the Ninth Circuit's Order Certifying Question. The underlying dispute arises from the LUC's reclassification of 1,060 acres of land in South Kohala on Hawai'i Island. The LUC classified this land as "agricultural" until 1989, when it reclassified the land as "urban." In exchange for reclassification to allow for development, the LUC required that a percentage of the residential units constructed be "affordable," along with other conditions. In 2008, believing that the then-landowner, Bridge Aina Le'a LLC (Bridge), had failed "to perform according to the conditions imposed and to the representations and commitments made to the [LUC] in obtaining reclassification," the LUC issued an order requiring Bridge to show cause why the land should not be reclassified back to agricultural use. In February 2009, Bridge told the LUC that DW had agreed to purchase the property along with the right to develop it for residential use.

Notwithstanding DW's purchase and its representation that it had invested more than $28 million into the development, the LUC voted to reclassify the land as agricultural in April 2009 — finalized in a written order on April 25, 2011. This court eventually vacated that order because the LUC had not complied with HRS § 205-4 (2007) when it reclassified the land. DW Aina Le'a Dev., LLC v. Bridge Aina Le'a, LLC, 134 Hawai'i 187,

4

213, 339 P.3d 685, 711 (2014). On February 23, 2017, DW filed the complaint currently at issue in the Circuit Court of the First Circuit. DW alleged that the 2011 reclassification was an unconstitutional taking under the federal and state constitutions because the LUC failed to compensate DW for damages resulting from the land's reclassification. Specifically, DW alleged that the LUC's reclassification caused substantial delay in finalizing the purchase, resulting in an increased purchase price of a portion of the land compared to the original contract price. In addition, DW alleged that the reclassification resulted in "interest costs, loss of business opportunities, substantial increases in land acquisition costs, inability to obtain financing as well as damages to its general business name and reputation." The takings claim is styled as an "inverse condemnation" action - an action that allows a landowner to enforce the Takings Clause against the government where a regulatory action eliminates or severely diminishes the land's economic value. Leone v. Cty. of Maui, 141 Hawai'i 68, 81, 404 P.3d 1257, 1270 (2017) (citing Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015 (1992); Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001)).

A.    Federal Court Proceedings

        The LUC removed the case to the United States District

Court for the District of Hawai'i (district court)[5] and then filed a motion to dismiss, arguing that the statute of limitations on DW's takings claim had expired.  The district court agreed, applying the two-year statute of limitations found in HRS § 657-7 (1972).

The district court determined the statute of limitations for the state constitutional claim by reference to the statute of limitations for the federal constitutional claim. First, with respect to DW's federal takings claim, the district court found that although DW did not bring its claim via 42 U.S.C. § 1983 (1996), the two-year statute of limitations for such a claim should apply.[6]  The court reasoned that "there is no substantive distinction between a federal regulatory takings claim brought . . . under § 1983 and a federal regulatory takings claim that might be brought . . . directly under the federal Constitution."  DW Aina Le'a Dev., LLC v. State of Hawai'i Land Use Comm'n, No. 17-00113 SOM-RLP, 2017 WL 2563226, at *7 (D. Haw. Jun. 13, 2017).  The district court further held that because HRS § 657-7 and the Takings Clause of the Hawai'i Constitution both use the term "compensation," HRS § 657-7 ought

_____

[5]    The Honorable Susan Oki Mollway presided.

[6]    Federal courts use state personal injury statutes of limitations for claims brought under § 1983.  Wilson v. Garcia, 471 U.S. 261, 275-76 (1985).  Hawai'i's statute of limitations for "the recovery of compensation for damage or injury to persons or property" is found in HRS § 657-7.

to apply to the state constitutional claims. Id. at *11.

Second, the district court found that even if the limitation in HRS § 657-7 did not apply, the two-year limitation in HRS § 661-5 barred both state and federal takings claims. Id. at *9. HRS § 661-5 covers "[e]very claim against the State, cognizable under this part[.]" "[T]his part" gives state courts jurisdiction over "[a]ll claims against the State founded upon any statute of the State; upon any rule of an executive department; or upon any contract, express or implied, with the State, and all claims which may be referred to any such court by the legislature[.]" HRS § 661-1(1). Although the text of the statute does not extend its application to cases arising under the Hawai'i Constitution, the district court relied on the Intermediate Court of Appeals' (ICA) decision in Maunalua Bay Beach Ohana 28 v. State, 122 Hawai'i 34, 222 P.3d 441 (App. 2009), to conclude that the limitations period applies nonetheless to disputes arising under the state constitution. 2017 WL 2563226, at *9. The Ninth Circuit Court of Appeals indicated, however, that this court's decision in Kaho'ohanohano v. State, 114 Hawai'i 302, 162 P.3d 696 (2007), appeared to contradict the district court's conclusion. In Kaho'ohanohano, this court found that the limitations period in HRS § 661-5 did not apply to the plaintiffs' constitutional claims because those

7

claims were not "cognizable under HRS chapter 661." 114 Hawai'i at 338, 162 P.3d at 732 (alterations omitted).

DW unsuccessfully urged the district court to rule that the "catch-all" six-year statute of limitations applied to the action. It now raises the same argument on appeal to the Ninth Circuit. Faced with this dispute on appeal, the Ninth Circuit Court of Appeals seeks this court's determination of the statute of limitations for a takings claim under the Hawai'i Constitution.[7]

**B.     Supreme Court Proceedings**

**1.     DW's Opening Brief**

DW first argues that HRS § 661-5 only applies to claims brought pursuant to Chapter 661. It continues to argue that HRS § 657-1(4) is the appropriate statute of limitations, "since there are no other specific limitations periods that would be applicable."

In accordance with Kaho'ohanohano, DW argues that no claim can fall under the two-year statute of limitations in HRS

---

[7]     In Bridge Aina Le'a, LLC v. State of Hawai'i Land Use Commission, 950 F.3d 610 (9th Cir. 2020), the Ninth Circuit determined that Bridge's takings claim under the Hawai'i Constitution - based on the same set of facts that underlie DW's claim here, but brought by a separate plaintiff - was not viable because Bridge did not show that it had suffered damages. Id. at 632. We do not address whether Bridge has preclusive effect on the merits of DW's claim because it is beyond the scope of the certified question presented to us, which asks only what the statute of limitations is for such a claim.

§ 661-5 unless it is a type of claim cognizable under that chapter.[8]  In DW's view, its claims are not founded upon a statute because "claims based on the constitution are not founded upon any statute of the State[.]"  It also contends the claims are also not based upon an implied contract between the State and DW because "the right to be compensated for a taking of property does not arise upon a contract, but rests primarily upon a vested constitutional right."  (Citing Hiji v. City of Garnett, 804 P.2d 950 (Kan. 1991).)

Further, DW argues that its claims are not based on an executive department regulation, but instead, on an "improper reversion of land classifications, from urban to agricultural[.]"  Thus, according to DW, because "DW's claims are not founded upon a statute, upon any regulation of an executive department or upon any contract and the claims were not referred to the court by the legislature, but brought pursuant to the [Hawai'i] Constitution itself," the Chapter 661 two-year statute of limitations does not apply.

DW recognizes that the ICA applied the two-year statute of limitations in HRS § 661-5 to a takings claim under

_____

[8]    As stated supra, note 2, HRS § 661-1(1) governs "[a]ll claims against the State founded upon any statute of the State; upon any rule of an executive department; or upon any contract, expressed or implied, with the State, and all claims which may be referred to any such court by the legislature[.]"

9

the Hawai'i Constitution in <u>Maunalua Bay</u>, but argues that <u>Kaho'ohanohano</u> overruled <u>Maunalua Bay</u> by implication.

DW further asserts that takings claims are not properly treated as personal injury actions, which would subject the claims to the two-year statute of limitations in HRS § 657-7, because a takings cause of action arises from the text of the Hawai'i Constitution.  Citing <u>Au v. Au</u>, 63 Haw. 210, 626 P.2d 173 (1981), DW argues that this court "prioritizes the type of wrong over the end result" when determining which statute of limitations applies.  Thus, it maintains that because "the true nature of DW's takings claims is not the damages incurred to its property interests, but rather the unconstitutional takings of its property interests without just compensation," the personal injury statute of limitations does not apply.  DW argues that the federal district court was incorrect to apply the personal injury statute of limitations because the personal injury limitations period does not apply to <u>all</u> constitutional claims, only those federal constitutional claims brought pursuant to 41 U.S.C. § 1983.  It asserts state takings claims are distinct from § 1983 claims in that the state has "the power and the right to revert the land from urban to agricultural" zoning, so long as just compensation is provided.  Additionally, DW cites <u>First English Evangelical Lutheran Church of Glendale v. County</u>

of Los Angeles, 482 U.S. 304 (1987), to support the proposition that a claim based on the constitution itself is fundamentally different from a claim based on a statute; thus, the § 1983 statute of limitations should not apply to a takings claim.

## 2.   Defendants' Answering Brief

The LUC asserts that, "[a]s a general principle, all cognizable claims for money damages against the State are subject to a statutory limitations period," and that the period is two years.

The LUC first argues that inverse condemnation claims should be characterized as claims arising under an implied contract.  According to the LUC, Meyer v. Territory of Hawai'i, 36 Haw. 75 (Haw. Terr. 1942), supports its interpretation.  In Meyer, the plaintiff brought suit for a taking pursuant to a statute that permitted suits based on implied contracts with the Territory of Hawai'i.  Id. at 76.  The LUC pointed out that North Dakota, Virginia, Ohio, Maryland, Kansas, and Alabama have also treated takings claims as arising from implied contracts, though it recognizes that Kansas has also applied the statute of limitations for adverse possession to such claims.  The LUC also contends that the United States Supreme Court decided similarly in Phelps v. United States, 274 U.S. 341, 343 (1927), with respect to takings claims brought under the U.S. Constitution.

11

According to the LUC, if DW's claim is construed as a claim against the State arising out of an implied contract, the claim would be subject to HRS § 661-5. The LUC argues that this court should look to the "underlying realities" of the claim to determine which statute of limitations should apply.

The LUC distinguishes Kaho'ohanohano on the ground that the constitutional provision sought to be enforced in this case does not prohibit the government from taking private property; it merely requires that the government compensate the owner. According to the LUC, Kaho'ohanohano and related cases[9] do not prohibit the application of HRS § 661-5 to all constitutional claims, only to the claim at issue in that case – which was a claim under article XVI, section 2 (regarding membership in an employees' retirement system) – not a takings claim.

The LUC argues that the catch-all statute of limitations in HRS § 657-1 does not apply because it is a statute of general application. Quoting Big Island Small Ranchers Ass'n v. State, 60 Haw. 228, 236, 588 P.2d 430, 436 (1978), the LUC asserts that "statutory laws of general application are not applicable to the State unless the

---

[9] The LUC also distinguishes Kaleikini v. Yoshioka, 129 Hawai'i 454, 304 P.3d 252 (2013), and Nelson v. Hawaiian Homes Commission, 130 Hawai'i 162, 307 P.3d 142 (2013), on the grounds that the plaintiffs in those cases sought declaratory and injunctive relief and the issue was whether the State had waived sovereign immunity for an award of attorneys' fees.

12

legislature in the enactment of such laws made them explicitly applicable to the State."  In Big Island, this court held that HRS Chapter 480, which regulates intrastate commerce, did not apply to the State.  Similarly, the LUC cites Chun v. Board of Trustees of Employees' Retirement System, 106 Hawai'i 416, 433, 106 P.3d 339, 356 (2005), for the same principle; this court held in Chun that HRS § 478-3 (1986), which permits post-judgment interest, did not apply to judgments against the State.

Finally, the LUC contends that even if we conclude that HRS § 661-5 does not apply to DW's claim, we should conclude that HRS § 657-7 does.  HRS § 657-7 provides a two-year statute of limitations for "[a]ctions for the recovery of compensation for damage or injury to persons or property[.]"  The LUC argues that the use of the terms "compensation" and "damage" in both the Takings Clause of the Constitution and the statute of limitations shows that the statute applies to takings claims.  The LUC disagrees with the proposition stated in Au that HRS § 657-7 only applies to physical injury to persons or tangible interests in property.  The LUC asserts that Higa v. Mirikitani, 55 Haw. 167, 169-70 n.5, 517 P.2d 1, 3 n.5 (1973), upon which the Au court relied, did not limit the applicability of HRS § 657-7 to physical injuries, but merely noted that physical injury was the context in which the statute had

previously been applied.[10]

### 3.  DW's Reply Brief

DW points out that, of the states applying the limitations period for implied contracts to takings claims, all but Virginia have a limitations period of six years.

With respect to the argument that a takings claim is based upon an implied contract, DW continues to argue that the language of Kaho'ohanohano is dispositive, stating that "constitutional claims" are "plainly not 'founded upon any statute of the State; or upon any regulation of an executive department; or upon any contract,'" and therefore are not subject to HRS § 661-5.  (Quoting Kaho'ohanohano, 114 Hawai'i at 338, 162 P.3d at 732.)  Similarly, DW argues that the Court's holding in United States v. Dickinson, 331 U.S. 745, 748 (1947), that federal takings claims are "founded upon the Constitution of the United States" supports its position.  DW further argues that the Kansas Supreme Court has expressly rejected the contention that a takings claim arises out of an implied contract, citing Hiji.  Along with Kansas, DW argues that Nevada, Texas, Washington, and Michigan courts have taken the view that the statute of limitations for breach of an implied

---

[10]     The LUC notes that DW's claim alleges a regulatory taking rather than a physical taking but argues that the same statute of limitations should apply to both.

contract does <u>not</u> apply to takings claims.

DW also contends that takings claims under the Hawai'i Constitution should be "subject to stricter protections, including a lengthier statute of limitations," than personal injury actions. Finally, DW responds that the State waived sovereign immunity when it removed this matter to federal court, so its arguments about generally-applicable statutes should be ignored.

**4.  OCA's Amicus Curiae Brief**

As amicus curiae, OCA argues that the statute of limitations for inverse condemnation should be the same as the limitations period for adverse possession.[11]

OCA begins with the premise that article I, section 20 of the Hawai'i Constitution is self-executing. Consequently, an inverse condemnation action does not seek damages for a taking; instead, such an action seeks to compel the government to recognize that there has been a taking. Once the government recognizes that there has been a taking, just compensation for that taking is automatically warranted.

OCA then analogizes inverse condemnation to adverse possession - an action in which "a non-owner asserts an interest

---

[11]    Although OCA does not cite to Hawai'i's statute of limitations for adverse possession in its amicus brief, the relevant limitations period is twenty years, set forth in HRS § 657-31.

in, or ownership of, the owner's property." OCA argues that property owners are in the same position in inverse condemnation and adverse possession actions. Recognizing when inverse condemnation has occurred and when land is being adversely possessed both take significant time. A regulation's impact on land's economic value may not appear immediately. Similarly, a landowner may not immediately realize that another person is adversely possessing their land.

OCA then asserts that "the majority national rule is that when an inverse condemnation claim is not governed by a specific statute of limitations, the adverse possession limitation period applies, not the 'catch all.'" OCA cites several out-of-state cases in which state supreme courts adopted this rule. In one of these cases, White Pine Lumber Co. v. City of Reno, 801 P.2d 1370, 1371 (Nev. 1990), the court noted that, "had the 'taker' in this case been a private party, the applicable limitations period would have been the one for acquiring title by adverse possession." The Nevada court used this comparison to conclude that the statutes of limitation ought to be the same for the two types of actions. Id. at 1371–72.

Finally, OCA addresses the fundamental differences between torts and takings. While the purpose of a plaintiff who

brings a tort claim is to establish that the defendant's action was <u>wrong</u>, a takings claim requires that the government's action was <u>not</u> wrong and instead simply warrants compensation. OCA argues that this distinction renders tort law unsuitable for resolving inverse condemnation actions.

5. **Defendants' Response to OCA's Amicus Brief**

The LUC first argues that this court should decline to adopt a position not taken by any party to the litigation. Further, it asserts "[f]undamental differences between adverse possession claims and inverse condemnation claims make the application of the same statute of limitations inappropriate." Citing <u>Hart v. City of Detroit</u>, 331 N.W.2d 438, 497 (Mich. 1982), the LUC argues that in most cases, actions of the government that could constitute a regulatory taking would not constitute adverse possession. Additionally, the LUC contends that adverse possession does not apply against the government. The LUC also notes that "in all the cases OCA cites in which courts adopted the adverse possession statutory period for inverse condemnation claims, the statutory period was shorter than the twenty years under Hawai'i law."

Finally, the LUC argues that the policy considerations underlying the twenty-year statute of limitations for adverse possession do not apply to inverse condemnation claims.

Specifically, the LUC contends that, unlike takings, the doctrine of adverse possession is meant to discourage landowners from leaving their land unused for long periods of time; a long statute of limitations facilitates this.

### III. DISCUSSION

**A.    The Two-Year Statute of Limitations in HRS § 661-5 for Claims Against the State Does Not Apply**

The language of Hawai'i's Takings Clause shows that it is self-executing.  Consequently, DW's claim pursuant to the clause is properly construed as a direct constitutional claim rather than a claim based on an implied contract with the State. The claim is therefore beyond the scope of HRS § 661-1 and the accompanying statute of limitations for that chapter.

#### 1.    The Takings Clause of the Hawai'i Constitution is self-executing

Kaho'ohanohano is clear that "constitutional claims are plainly not 'founded upon any statute of the State; or upon any regulation of an executive department; or upon any contract' and were not 'referred to [the] court by the legislature[.]'"  114 Hawai'i at 338, 162 P.3d at 732.  Instead, the claims in Kaho'ohanohano, like DW's claim, were based on the language of the Hawai'i Constitution.[12]  With respect to takings, the Hawai'i

---

[12]    In Kaho'ohanohano, the Legislature had recently amended HRS
(continued . . .)

Constitution states, "Private property shall not be taken or damaged for public use without just compensation." Haw. Const. art. 1, § 20. We conclude that the Takings Clause of the Hawaiʻi Constitution contains self-executing language, enabling suits based on the provision itself without implementing legislation.

This court has stated:

> A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.

State v. Rodrigues, 63 Haw. 412, 414, 629 P.2d 1111, 1113 (1981) (quoting Davis v. Burke, 179 U.S. 399, 403 (1900)).

Article 16, section 16 of the Hawaiʻi Constitution states, "The provisions of this constitution shall be self-executing to the fullest extent that their respective natures permit." In general, with respect to provisions where the constitution uses the phrase "as provided by law," this court has held that the provision is not self-executing; rather, this phrase denotes that some additional legislation is necessary to implement it. Rodrigues, 63 Haw. at 415, 629 P.2d at 1114. The

_____

§ 88-107 (Supp. 2006) in a way that allegedly retroactively divested the state Employees' Retirement System of $346.9 million. 114 Hawaiʻi at 342, 162 P.3d at 736. State and county employees brought suit claiming, among other things, that the amendment violated article XVI, section 2 of the Hawaiʻi Constitution, which states: "Membership in any employees' retirement system of the State or any political subdivision thereof shall be a contractual relationship, the accrued benefits of which shall not be diminished or impaired." Id. at 310 n.3, 315, 162 P.3d at 705 n.3, 709.

absence of the phrase "as provided by law" in the constitutional provision means that no further legislation is necessary to effectuate the right.

The Takings Clause thus satisfies the test set forth in Rodrigues. The rule that the State may not take or damage private property without just compensation provides a triggering event (taking or damage to private property), a remedy (compensation), and a metric for the remedy. "As provided by law" does not appear in article I, section 20. The Takings Clause thus contains language that is self-executing and needs no further legislation to facilitate a private right of action. See Cty. of Hawai'i v. Ala Loop Homeowners, 123 Hawai'i 391, 413, 235 P.3d 1103, 1125 (2010) (holding that the right of enforcement in article XI, section 9 of the Hawai'i Constitution is self-executing because the language "does not suggest that legislative action is needed before the right can be implemented"). Indeed, other plaintiffs have brought complaints pursuant to the Takings Clause itself. See, e.g., Leone v. Cty. of Maui, 141 Hawai'i 68, 72, 404 P.3d 1257, 1261 (2017) (landowners' complaint raised a claim directly under the Takings Clause of the Hawai'i Constitution as Count 1); Carswell v. Dep't of Land and Nat. Res., No. 28730, at 1 (App. May 22, 2009) (SDO) (noting that Count 3 of Plaintiffs' complaint was a "reverse

condemnation" claim).

2.    **Takings claims are not based on an implied contract
      with the State**

The LUC urges us to adopt the view of those states
that have found takings claims to arise out of an implied
contract.  As DW's takings claim is a direct constitutional
claim, we decline to characterize it as based on an implied
contract with the State.

Although, as the LUC asserts, some state supreme
courts have taken the implied contract route, many others have
not.  We find particularly persuasive the view of the Kansas
Supreme Court, which specifically rejected the position the LUC
urges us to take:

> Although inverse condemnation actions have been
> described as being in the nature of implied contract
> actions, the right to just compensation for property taken
> is also a firmly grounded constitutional right.  While our
> earlier cases primarily discuss the implied contract theory
> of recovery, both the Fifth Amendment to the United States
> Constitution and [the Takings Clause] of the Kansas
> Constitution guarantee payment for private property
> appropriated to public use.  Thus, the right to recover
> damages for property taken does not rest solely upon a
> contract "expressed or implied but not in writing" under
> K.S.A. 60-512(1), but rests primarily upon a vested
> constitutional right.  Regardless of how the cause of
> action is described or what theory of recovery is applied,
> the basic right to recover compensation for property taken
> for public purposes is a constitutional one.

Hiji, 804 P.2d at 957-58.

The validity of the LUC's assertion that the federal
courts have held takings claims to arise out of an implied
contract is also suspect.  Notably, the United States Supreme

21

Court recently observed that "[a]lthough there is no express cause of action under the Takings Clause, aggrieved owners can sue through the Tucker Act under our case law." Me. Comm. Health Options v. United States, -- U.S. ---, 140 S. Ct. 1308, 1328 n.12 (2020). The Tucker Act authorizes "claim[s] against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." Id. at 1327 (alterations in original) (quoting 28 U.S.C. § 1491(a)(1)). The Tucker Act's language is nearly identical to the language in HRS § 661-1, except for the addition of "the Constitution" to the list of bases for suit. This indicates that claims pursuant to the federal Takings Clause are founded upon the U.S. Constitution, rather than on the breach of an implied contract.[13] In short, the federal case law on this topic does not appear to provide an endorsement of the State's conclusion in the case before us.

**B. The Two-Year Statute of Limitations in HRS § 657-7 for Injuries to Person or Property Does Not Apply**

HRS § 657-7 states, "Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action

---

[13] It appears that the statute of limitations under the Tucker Act for a takings claim is six years. See 28 U.S.C. § 2501 (2004).

22

accrued, and not after[.]" The LUC's arguments that HRS § 657-7 applies are unpersuasive. Black's Law Dictionary defines "injury" as "[t]he violation of another's legal right, for which the law provides a remedy[.]" Injury, Black's Law Dictionary (11th ed. 2019). A takings claim seeks compensation for something the government is entitled to do; a taking is not a legal injury, but rather an entitlement to just compensation. See 26 Am. Jur. 2d Eminent Domain § 21 (2020) ("Within its own jurisdiction, each state possesses the sovereign power of eminent domain."); 29A C.J.S. Eminent Domain § 2 (2020) ("Unless restricted by the constitution, a sovereign's eminent domain powers are absolute and total. Such powers can be denied or restricted only by fundamental law. It cannot be delegated or restricted by contract. It is superior to all property rights, and every owner of property holds it subject to the right or power of eminent domain." (footnotes omitted)).

In Au, Plaintiff/Appellant claimed that she had bought a house based on Defendants' alleged fraudulent representations that the house had not been subject to leakage. The house was subsequently damaged by water leaks, and Plaintiff/Appellant sued for fraud and other claims. In determining the appropriate statute of limitations for the fraud claim, we noted:

> Although the end result of the fraudulent representation
> was physical injury to appellant's tangible interest in
> property, wherein HRS § 657-7 would seemingly apply, we

23

> believe that the instant case falls within the purview of
> HRS § 657-1(4).  The nature of this claim is not the
> physical injury to property, rather it is the making of the
> fraudulent representations concerning the condition of the
> home which induced appellant to purchase it. Since
> fraudulent representations are not governed by a specific
> limitations period, the general limitations period set
> forth in HRS § 657-1(4) applies.

Au, 63 Haw. at 216-17, 626 P.2d at 179; see also Higa, 55 Haw. at 170-73, 517 P.2d at 4-6 (applying a six-year statute of limitations under HRS § 675-1 to a legal malpractice claim involving "a non-physical injury to an intangible interest.").

Here, too, although DW's claims allege diminution in the value of their property, the true nature of the claim is not that the LUC physically injured property, but that the property was taken without just compensation.

Moreover, "[v]irtually all cases having occasion to construe [HRS § 657-7] have done so in the context of claims for damages resulting from physical injury to persons or physical injury to tangible interests in property."  Higa, 55 Haw. at 170 n.5, 517 P.2d at 3 n.5 (collecting cases).  Because no "physical injury to tangible interests in property" is involved in DW's claim, HRS § 657-7 does not apply.  Au, 63 Haw. at 216, 626 P.2d at 178-79 (citing Higa, 55 Haw. at 170 n.5, 517 P.2d at 3 n.5).

C.    **The Twenty-Year Statute of Limitations for Adverse Possession Claims Does Not Apply**

Although OCA appears to be correct that states often use the adverse possession statute of limitations for inverse

condemnation claims, upon closer inspection of the sources cited, that rule is limited to claims arising from a physical invasion of land. For example, OCA cites White Pine for the proposition that "the majority national rule is that when an inverse condemnation claim is not governed by a specific statute of limitations, the adverse possession limitation period applies, not the 'catch all.'" Indeed, White Pine cited Frustuck v. City of Fairfax, 212 Cal. App. 2d 345, 374 (Cal. Dist. App. 1963); Difronzo v. Village of Port Sanilac, 419 N.W.2d 756, 759 (Mich. Ct. App. 1988);[14] Krambeck v. City of Gretna, 254 N.W.2d 691, 695 (Neb. 1977); Brazos River Authority v. City of Graham, 354 S.W.2d 99, 109-110 (Tex. 1961); and Ackerman v. Port of Seattle, 348 P.2d 664, 667 (Wash. 1960), in which courts applied the adverse possession statute of limitations rather than the catch-all. White Pine, 801 P.2d at 1371. But the White Pine opinion further cited an A.L.R. article, which also stated:

> Although quite possibly the term "inverse condemnation" is applied even more frequently to actions for the recovery of consequential damages to land resulting from the action of a governmental unit or public utility not taking actual, direct, permanent possession of the land affected than it is to cases of recovery of compensation for a direct appropriation, the scope of the annotation is confined to the latter type of action.

---

[14] It appears that Michigan now applies the catch-all statute of limitations to takings claims. Hart, 331 N.W.2d at 444-45 (applying six-year catch-all statute of limitations to takings claim).

Charles C. Marvel, Annotation, State Statute of Limitations Applicable to Inverse Condemnation or Similar Proceedings by Landowner to Obtain Compensation for Direct Appropriation of Land Without the Institution or Conclusion of Formal Proceedings Against Specific Owner, 26 A.L.R.4th 68 n.3 (1983) (emphasis added).

Thus, White Pine and the accompanying authority stating that the majority rule applies the adverse possession limitation period refers only to physical takings, not to regulatory takings.[15]  Indeed, "[w]hile a statute of limitations for an action arising out of title to real property applies to inverse condemnation actions based on a physical taking, it does not apply to a regulatory takings claim based on enactment of a zoning ordinance[.]"  27 Am. Jur. 2d Eminent Domain § 733 (2020) (emphasis added); see also Reitsma v. Pascoag Reservoir & Dam, LLC, 774 A.2d 826, 838 (R.I. 2001) (noting that adverse possession statutes of limitation have been applied to physical takings claims).  We agree with the United States Supreme Court's observation that the "longstanding distinction between acquisitions of property for public use, on the one hand, and regulations prohibiting private uses, on the other, makes it

---

[15]    The cases cited to support the court's conclusion in White Pine similarly deal with physical, rather than regulatory, takings.  The exception is Ackerman, in which plaintiffs challenged the diminution in value of their property due to airplane noise.  Ackerman, 348 P.2d at 665-66.

inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking[.]'" Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 323 (2002) (footnote omitted). For this reason, we find OCA's position unpersuasive.

**D.  The Catch-All Statute of Limitations of HRS § 657-1(4) Applies to Regulatory Takings Claims**

As other statutes of limitations do not apply, the catch-all statute of limitations in HRS § 657-1 provides the correct limitation period to apply to DW's regulatory takings claim. HRS § 657-1(4) provides:

> The following actions shall be commenced within six years next after the cause of action accrued, and not after:
>
> . . . .
>
> > (4) Personal actions of any nature whatsoever not specifically covered by the laws of the State.

The statute does not define "personal actions." However, a "personal action," also referred to as an "action in personam," is "[a]n action in which the named defendant is a natural or legal person." Action in personam, Black's Law Dictionary (11th ed. 2019). Furthermore, "[a]n action is in personam where the judgment will impose a personal liability or obligation and does not affect the nature of the parties' interest in property." 1 Am. Jur. 2d Actions § 28 (2020).

27

Although a takings claim necessarily involves property, the action is personal because the Takings Clause "is designed to secure compensation, not to limit governmental interference with property rights." 26 Am. Jur. 2d Eminent Domain § 3 (2020). A takings claim brought against the State – a legal person – in order to impose a financial obligation is therefore a personal action within the meaning of HRS § 657-1(4). See Hart, 331 N.W.2d at 444-45 (conceptualizing inverse condemnation claims as personal actions).[16]

> In Au, we noted that a "personal action" has included:
>
> an action brought for the recovery of personal property, for the enforcement of a contract or to recover for its breach, or for the recovery of damages for the commission of an injury to the person or property; an action for the recovery of a debt, or damages from the breach of contract, or for a specific personal chattel, or for the satisfaction in damages for injury to the person or property. (Footnotes omitted.)

63 Haw. at 217, 626 P.2d at 179 (citations omitted).

Although the list of causes of action set forth in Au does not include an action seeking compensation for a taking under the Hawai'i Constitution, Au's list also does not purport

---

[16] When faced with determining the meaning of personal action under a similar general statute of limitations, the Supreme Court of Michigan concluded that "personal action" included inverse condemnation claims. Hart, 331 N.W.2d at 444-45. The Hart court reasoned: "As the plaintiffs are not seeking recovery of their lands but compensation for a [regulatory] taking by the sovereign, this cause of action may be logically conceptualized as a personal action which arises in relation to a former interest in real property." Id. The court therefore concluded that Michigan's general six-year statute of limitations statute applies to inverse condemnation claims. Id. at 445.

to be exhaustive. Indeed, the claim at issue in Au was fraudulent representation; notwithstanding that the words "fraudulent representation" are absent from the definition of personal action, the Au court held that HRS § 657-1(4) applied.[17] Id.

The LUC's argument that claims against it are exempt from HRS § 657-1 because it is a statute of general applicability is unavailing. First, where a statute "does not create a novel claim for relief, but merely establishes the circumstances under which" a party can recover damages, the State is subject to the statute even absent an express waiver of sovereign immunity. Fought & Co., Inc. v. Steel Eng'g & Erection, Inc., 87 Hawai'i 37, 56, 951 P.2d 487, 506 (1998) (holding that the State was subject to a statute allowing prevailing parties to recover costs of suit). The principle that individuals generally cannot sue the sovereign for substantive legal violations does not mean that a statute of limitations – part of the process of litigation – does not apply when the State is subject to suit pursuant to some other statute. To conclude that statutes of limitation that do not

---

[17] The plain text of HRS § 657-1(4), by extending to "[p]ersonal actions of any nature whatsoever," evinces the legislature's intent that the statute apply broadly. (Emphasis added.) Thus, we think reading Au as inclusive, rather than exclusive, is also consistent with the purpose and spirit of the statute.

explicitly apply to the State can never be invoked to govern a suit against the State could just as easily lead to the rule that there is no statute of limitations upon a regulatory takings claim at all.  HRS § 661-5 does not apply to constitutional claims, as set forth above, and there is no other statute of limitations that mentions the State.

Second, HRS § 657-1.5 (1991) exempts claims brought by the State from the statutes of limitation set forth in the chapter.[18]  There is no parallel exemption for claims brought against the State.  This suggests that actions brought against the State can fall under the limitations periods set forth in the chapter if the action meets the relevant subject matter requirements.  We also note that Maryland, Michigan, Mississippi, Vermont, and Wyoming have held that catch-all statutes of limitation apply to regulatory takings claims.  See Harford Cty. v. Md. Reclamation Assocs., Inc., 213 A.3d 757, 778 (Md. Ct. Spec. App. 2019); Hart, 331 N.W.2d at 444-45; City of Tupelo v. O'Callaghan, 208 So. 3d 556, 568 (Miss. 2017); Dep't of Forests, Parks & Recreation v. Town of Ludlow Zoning Bd., 869 A.2d 603, 607-08 (Vt. 2004); Smith v. Bd. of Cty. Comm'rs of

---

[18]    HRS § 657-1.5 states, "No limitation of actions provided for under this or any other chapter shall apply to bar the institution or maintenance of any action by or on behalf of the State and its agencies[.]" (emphasis added).

Park Cty., 291 P.3d 947, 954 (Wyo. 2013).

## IV. CONCLUSION

For the foregoing reasons, we respond to the certified question as follows: the statute of limitations for a takings claim under the Hawai'i Constitution is six years pursuant to HRS § 657-1(4).

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Paul B.K. Wong

