**FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000776
18-MAR-2024
07:56 AM
Dkt. 156 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

MAUNALUA BAY BEACH OHANA 28, a Hawai'i Non-Profit Corporation;
MAUNALUA BAY BEACH OHANA 29, a Hawai'i Non-Profit Corporation;
and MAUNALUA BAY BEACH OHANA 38, a Hawai'i Non-Profit
Corporation, individually and on behalf of all others similarly
situated, Plaintiffs-Appellants/Cross-Appellee, v.
STATE OF HAWAI'I, Defendant-Appellee/Cross-Appellant

NO. CAAP-19-0000776

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC051000904)

MARCH 18, 2024

HIRAOKA, PRESIDING JUDGE, NAKASONE AND McCULLEN, JJ.

<u>OPINION OF THE COURT BY HIRAOKA, J.</u>

Maunalua Bay Beach Ohana 28, Maunalua Bay Beach

Ohana 29, and Maunalua Bay Beach Ohana 38 (the **Beach Lot Owners**)

own thin strips of beach in the Portlock area of east O'ahu (the

**Beach Lots**).[1]  They sued the **State** of Hawai'i.  They sought a declaration that the State, by enacting 2003 Haw. Sess. Laws **Act 73,** took existing and future accreted land[2] without paying just compensation.  The circuit court agreed, but let the State take an interlocutory appeal.  We held that "Act 73 effectuated a permanent taking of" ownership rights in accreted land existing and unregistered as of Act 73's effective date.  Maunalua Bay Beach Ohana 28 v. State, 122 Hawai'i 34, 57, 222 P.3d 441, 464 (App. 2009), cert. rejected, No. 28175, 2010 WL 2329366 (Haw. June 9, 2010), cert. denied, 562 U.S. 1005, 131 S. Ct. 529, 178 L. Ed. 2d 374 (2010).  We remanded for the circuit court to decide whether Beach Lot Owners owned land that had accreted before Act 73's effective date and, if so, to determine just compensation for the taking.  Id.

On remand, the parties stipulated that the Beach Lots included land that accreted before Act 73 took effect (the **Accreted Land**).  The circuit court held a bench trial.[3]  It found that just compensation was $0.  It also granted the State's motion for costs and denied Beach Lot Owners' motion for attorneys fees.  Beach Lot Owners appeal from the resulting **Final Judgment**.  We hold: **(1)** the law of the case doctrine did not

---

[1]     According to the parties' stipulated facts, Beach Lot Owners are Hawai'i non-profit corporations "established by homeowners in the Portlock area for the specific and sole purpose of owning" the Beach Lots.

[2]     "Accreted land" is land formed by gradual accumulation on a beach or shore along the ocean by the action of natural forces.  See Hawaii Revised Statutes (**HRS**) § 171-1 (Supp. 2003).

[3]     The Honorable Virginia Lea Crandall presided.

2

prevent the circuit court from considering a change in the controlling legislation enacted after we decided <u>Maunalua Bay</u>; **(2)** the circuit court's finding that just compensation was $0 was not clearly erroneous; **(3)** Beach Lot Owners were not entitled to nominal damages; **(4)** Beach Lot Owners were not entitled to attorneys fees; **(5)** the circuit court did not abuse its discretion by denying certification of a damages class; and **(6)** the circuit court's determination that the State was the prevailing party is not material to the issues presented by this appeal, and moot. We affirm the Final Judgment.

## I. BACKGROUND[4]

The Estate of Bernice Pauahi Bishop (**Bishop Estate**) owned the land in the Portlock area of east Oʻahu. In the 1930s Bishop Estate subdivided the land into **Home Lots**. It kept the fee interest and leased the Home Lots. Many of the Home Lots were near the beach, but Bishop Estate never leased the Beach Lots — long, narrow strips of beach between the Home Lots and the ocean.

Bishop Estate never restricted the Beach Lots for exclusive use by lessees of Home Lots bordering the Beach Lots. In the 1990s Bishop Estate sold the fee interests in the Home Lots to their lessees, but continued to own the Beach Lots.

---

[4] Some of the background comes from the parties' stipulated facts and from the circuit court's unchallenged findings of fact. <u>See</u> <u>Okada Trucking Co. v. Bd. of Water Supply</u>, 97 Hawaiʻi 450, 459, 40 P.3d 73, 82 (2002) (noting that unchallenged factual findings are deemed to be binding on appeal).

3

Bishop Estate never restricted the Beach Lots for exclusive use of owners of Home Lots bordering the Beach Lots.

Before May 20, 2003, Hawaii Revised Statutes (**HRS**) § 171-2 provided:

> **Definition of public lands.** "Public lands" means all lands or interest therein in the State classed as government or crown lands previous to August 15, 1895, or acquired or reserved by the government upon or subsequent to that date by purchase, exchange, escheat, or the exercise of the right of eminent domain, or in any other manner; including submerged lands, and lands beneath tidal waters which are suitable for reclamation, together with reclaimed lands which have been given the status of public lands under this chapter, [subject to exceptions not at issue in this case.]

HRS § 171-2 (Supp. 2002).

Act 73 amended HRS § 171-2 by adding "accreted lands not otherwise awarded" to the definition of "public lands." 2003 Haw. Sess. Laws Act 73, § 2 at 128. It took effect on May 20, 2003. Id., § 8 at 130. It effectively made any land accreted to the Beach Lots after May 20, 2003, public land not owned by Bishop Estate.[5]

On May 6, 2005, Bishop Estate sold the Beach Lots to Beach Lot Owners for $3,000. Each Beach Lot owner paid $1,000 for its lot. The deeds had a "restriction limiting the use of the parcels for non-residential use only." They also had restrictive covenants running with the land. The covenants require that the Beach Lots be "used by the public for access, customary beach activities and related recreational and community purposes . . . in perpetuity[.]"

---

[5] Act 73 also restricted the ability of private landowners to register accreted land in land court, 2003 Haw. Sess. Laws Act 73, § 4 at 129, and to quiet title to accreted land, id., § 5 at 129.

Two weeks after buying the Beach Lots, Beach Lot Owners sued the State for inverse condemnation. They sought a declaration that Act 73 took the Accreted Land, an injunction against enforcement of Act 73 without payment of just compensation, and payment of just compensation. The circuit court certified a plaintiff class "consisting of all non-governmental owners of oceanfront real property in the State of Hawai'i on and/or after May 19, 2003."

The circuit court granted Beach Lot Owners' motion for partial summary judgment, declaring that Act 73 "effected an uncompensated taking of, and injury to, [Beach Lot Owners'] accreted land[.]"[6] Maunalua Bay, 122 Hawai'i at 36, 222 P.3d at 443. The State took an interlocutory appeal. We held that Act 73 "effectuated a permanent taking of" accretions existing and unregistered as of Act 73's effective date. Id. at 57, 222 P.3d at 464. But we also held that Beach Lot Owners "and the class they represented had no vested property rights to future accretions to their oceanfront land and, therefore, Act 73 did not effect an uncompensated taking of future accretions[.]" Id. We remanded for the circuit court to decide whether Beach Lot Owners owned land that had accreted before Act 73's effective date and, if so, to determine just compensation for the taking. Id.

On remand, Beach Lot Owners moved to certify a damages class of "[a]ll private owners of oceanfront property in the

---

[6] The Honorable Eden Elizabeth Hifo presided.

State of Hawai'i who, as of May 19, 2003, owned accreted land[.]" The circuit court denied class certification. The parties stipulated that Beach Lot Owners owned land that accreted before Act 73 took effect, and that "[j]ust compensation, if any, shall be based on the fair rental value of the accreted land as of [Act 73's effective date], but taking into account restrictions on [Beach Lot Owners'] use of the property, if appropriate."

The circuit court held a bench trial to determine just compensation. It found that just compensation was $0. It granted the State's motion for costs, denied Beach Lot Owners' motion for attorneys fees, and entered the Final Judgment for the State and against Beach Lot Owners.[7] Beach Lot Owners appealed.[8]

Beach Lot Owners contend that the circuit court erred by: **(1)** concluding that no permanent taking occurred; **(2)** not awarding damages; **(3)** not awarding nominal damages; **(4)** denying their motion for attorneys fees; **(5)** denying their motion to certify a damages class; and **(6)** determining that the State was the prevailing party.

---

[7]    The Honorable James C. McWhinnie entered the orders on costs and attorneys fees and the Final Judgment.

[8]    The State cross-appealed but the cross-appeal is moot because we affirm the Final Judgment. See Leone v. County of Maui, 141 Hawai'i 68, 89, 404 P.3d 1257, 1278 (2017) (concluding that cross-appeal was moot because circuit court's judgment was affirmed).

## II. STANDARDS OF REVIEW

### A. Findings of Fact and Conclusions of Law

We review findings of fact under the clearly erroneous standard.  Est. of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007).  A finding of fact is clearly erroneous when the record lacks substantial evidence to support the finding or when, despite substantial evidence to support the finding, we are left with a definite and firm conviction that a mistake has been made.  Id.  "Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. (citations omitted).

We review conclusions of law de novo under the right/wrong standard.  Klink, 113 Hawaiʻi at 351, 152 P.3d at 523.  But a conclusion of law presenting mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusion depends on the facts and circumstances of the individual case.  Id.  A conclusion of law supported by the trial court's findings of fact and applying the correct rule of law will not be overturned.  Id.

### B. Attorneys Fees Under the Private Attorney General Doctrine

We review a denial of attorneys fees under the private attorney general doctrine de novo under the right/wrong standard. Pub. Access Trails Haw. v. Haleakala Ranch Co., 153 Hawaiʻi 1, 21, 526 P.3d 526, 546 (2023).

C.   **Class Certification**

We review the denial of class certification for abuse of discretion.  Gurrobat v. HTH Corp., 133 Hawaiʻi 1, 14, 323 P.3d 792, 805 (2014).

D.   **Prevailing Party Determination**

We review a trial court's determination of who is the prevailing party de novo under the right/wrong standard.  Molinar v. Schweizer, 95 Hawaiʻi 331, 334-35, 22 P.3d 978, 981-82 (2001).

### III. DISCUSSION

A.   **The circuit court did not err by concluding, given Act 56 (2012), that Act 73 effected a temporary taking.**

Beach Lot Owners argue that the circuit court "erred in disregarding the law of the case . . . and concluding that there was no taking" of the Accreted Land.  The argument fails for two reasons.

First, the circuit court did not conclude there was no taking; had it done so, it would not have had to try the claim for just compensation.  Beach Lot Owners cite to the circuit court's conclusions that Act 73 did not effect a regulatory taking under various tests commonly called Loretto, Lucas, and Penn Central.  See Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 538-39, 125 S. Ct. 2074, 161 L. Ed. 2d 876 (2005); see also Leone v. County of Maui, 141 Hawaiʻi 68, 81, 404 P.3d 1257, 1270 (2017) (summarizing law on regulatory takings).  But the circuit court also concluded:

8

> 11.    In addition to ***reaffirming its conclusion that Act 73 effected a temporary taking of [Beach Lot Owners'] accreted lands***, this Court further concludes that, by repealing portions of Act 73, Act 56 ended the taking of accreted lands, effective April 23, 2012.  In other words, the State effected a ***temporary taking*** of [Beach Lot Owners'] accreted lands from May 20, 2003 to April 23, 2012.

(Emphasis added.)  The conclusion was not wrong.  And it follows Beach Lot Owners' argument (in its opening brief) that Act 56 "merely limited the taking to a period of nine years."

Second, the circuit court did not violate the law of the case.  Under the law of the case doctrine, "a determination of a question of law made by an appellate court in the course of an action becomes the law of the case and may not be disputed by a reopening of the question at a later stage of the litigation." Hussey v. Say, 139 Hawaiʻi 181, 185, 384 P.3d 1282, 1286 (2016) (citation omitted).  On December 30, 2009, we held that Act 73 "effectuated a *permanent* taking of" accretions existing and unregistered as of Act 73's effective date.  Maunalua Bay, 122 Hawaiʻi at 57, 222 P.3d at 464 (emphasis added).  Three years later, **Act 56** of the 2012 legislature changed the law by terminating the taking effectuated by Act 73.  Act 56 further amended the definition of "public lands" in HRS § 171-2.  2012 Haw. Sess. Laws Act 56, § 1 at 122.  Under Act 56, only land that accreted after the effective date of Act 76 were public lands. Id.  Act 56 took effect on April 23, 2012.  Id. § 5 at 123. Act 56 thus limited the effect Act 73 had on Beach Lot Owners to the period from May 20, 2003 (the effective date of Act 73) to April 23, 2012.

> [A] governmental body may acquiesce in a judicial declaration that one of its ordinances has effected an unconstitutional taking of property; the landowner has no right under the Just Compensation Clause [of the Fifth Amendment to the United States Constitution] to insist that a "temporary" taking be deemed a permanent taking.

First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles County, 482 U.S. 304, 317, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987). Under some circumstances, a change in controlling law could support relief under Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 60(b)(6). See Gonzalez v. Crosby, 545 U.S. 524, 531, 125 S. Ct. 2641, 162 L. Ed 2d 480 (2005) (citing Fed. R. Civ. P. 60(b)(6)). Instead, Beach Lot Owners stipulated that the circuit court would decide "whether Act 73 effected and Act 56 ended a *temporary* taking of any accreted lands from May 19, 2003, to April 23, 2012 (or any part of that time) and if so the amount of just compensation, if any, that is due to [Beach Lot Owners] for the taking." (Emphasis added.) The law of the case doctrine did not prevent the circuit court from considering the change in the controlling law, particularly given Beach Lot Owners' stipulation.

**B. The circuit court's finding that just compensation to Beach Lot Owners was $0 was not clearly erroneous.**

Beach Lot Owners argue that "depriving [them] of ocean-front property in Maunalua Bay for 9 years cannot possibly be valued at $0." The parties stipulated that "[j]ust compensation, if any, shall be based on the fair rental value of the accreted land as of May 19, 2003, but taking into account restrictions on

10

plaintiffs' use of the property, if appropriate." The restrictions included limiting the Beach Lots to non-residential use and requiring that they be open to the public for access, customary beach activities, and related recreational and community purposes, in perpetuity.

Beach Lot Owners argue that their "[o]wnership of the [Beach Lots] was expected to enhance the value of the adjoining [Home Lots] and protect the solitude, peace, and quiet the owners enjoyed. The purchase was made to protect the investments made in their existing lots." (Citations to the record omitted.) Beach Lot Owners do not own any Home Lots. Beach Lot Owners conflate their entitlement to just compensation with the interests of owners of the Home Lots, who are not parties to this case.

Beach Lot Owners' evidence of fair rental value was based on the testimony of Stephany **Sofos**. The circuit court "did not find Ms. Sofos to be a credible witness" and gave "no weight to her testimony." "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (citation omitted).

The circuit court instead credited the testimony of Craig **Leong**, a licensed real estate appraiser who holds the MAI designation.[9]  The circuit court found:

> 108.  Mr. Leong based his conclusion on highest-and-best use on, among other things, the irregular shapes and narrow widths of the parcels; limited access; conservation-district regulations; the restrictive covenants in the KS deeds to plaintiffs; the State's non-interference with plaintiffs use; the lack of any history of financial gain from the makai land, and the fact that [Bishop Estate] sold the three beach reserve lots for $1,000 each.  The Court finds that Mr. Leong's analysis is credible.
>
> 109.  The Court agrees with Mr. Leong's conclusion: "Given the highly irregular, and narrow property characteristics of the accreted land, and after consideration of the restricted street access to the subject property, and perhaps, more importantly, as both government and private land use regulations and covenants restrict the legally permissible use of the accreted land area to public access, customary beach activities, and related recreational and community purposes, the appraiser concludes that no known market buyer exists for the subject accreted land."
>
> 110.  Mr. Leong concludes that there was a $0 market rent attributable to the land with a retrospective date of 2003.
>
> 111.  The Court finds Mr. Leong's ultimate conclusion of value to be credible, logical, and well founded.  The Court finds that the fair market rent as of May 2003 was $0.

(Citations to the record omitted.)

Beach Lot Owners' statement of the points of error challenges these findings, but their opening brief presents no argument about why they were clearly erroneous.  See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived.").  At any rate, the findings are supported

---

[9]     MAI means Member, Appraisal Institute.  "The Appraisal Institute is a global professional association with over 16,000 professionals in almost 50 countries throughout the world."  See Appraisal Institute, https://www.appraisalinstitute.org/about [https://perma.cc/L27X-7E3E] (last visited Mar. 8, 2024).

by substantial evidence in the record, and were not clearly erroneous.

The circuit court concluded:

> 69.   For all of the reasons set forth in the findings of fact, including the credible testimony of Mr. Leong, the Court finds that the fair market rent for the [Accreted Land] on May 19, 2003 was $0.

This conclusion of law was actually a finding of fact.[10]  It was supported by substantial evidence in the record, and was not clearly erroneous.

## C.   Beach Lot Owners were not entitled to nominal damages.

Beach Lot Owners argue that "the lower court should have awarded $1 nominal damages to each Appellant."  "[N]ominal damages are a small and trivial sum awarded for a technical injury due to a violation of some legal right and as a consequence of which some damages must be awarded to determine the right."  Kanahele v. Han, 125 Hawai'i 446, 457–58, 263 P.3d 726, 737–38 (2011) (cleaned up).

"A takings claim seeks compensation for something the government is entitled to do; a taking is not a legal injury, but rather an entitlement to just compensation."  DW Aina Le'a Dev., LLC v. State Land Use Comm'n, 148 Hawai'i 396, 404, 477 P.3d 836, 844 (2020) (citations omitted).  The circuit court found that

---

[10]    The label of a finding of fact or a conclusion of law does not determine the standard of review because the accuracy of the label affixed by the trial court is freely reviewable by an appellate court.  Cf. Kilauea Neighborhood Ass'n v. Land Use Comm'n, 7 Haw. App. 227, 229, 751 P.2d 1031, 1034 (1988) (concerning an administrative agency's findings and conclusions).

just compensation for Act 73's temporary taking of the Accreted Land was $0. Beach Lot Owners did not sustain a "technical injury due to a violation of some legal right[.]" Kanahele, 125 Hawaiʻi at 457-58, 263 P.3d at 737-38. They were not entitled to nominal damages.

> **D. Beach Lot Owners were not entitled to attorneys fees under the private attorney general doctrine.**

Beach Lot Owners sought attorneys fees under the equitable doctrine of private attorney general. The doctrine is an exception to the "American Rule" that each party must pay their own litigation expenses. Pub. Access Trails Haw., 153 Hawaiʻi at 22, 526 P.3d at 547.

**(1) The claim is barred by sovereign immunity under the circumstances of this case.** The State argues that sovereign immunity bars an award of attorneys fees. The only claim on which Beach Lot Owners prevailed was for a declaration that Act 73 was an uncompensated taking of unregistered land that had accreted between the effective dates of Act 73 (May 20, 2003) and Act 56 (April 23, 2012). When a party seeks declaratory relief against the State,

> the ability to sue the state does not stem from a waiver of sovereign immunity, but from the fact that sovereign immunity does not bar the suit in the first place. Therefore, *no clear statutory waiver that could be extended to attorney's fees is present when the underlying claim is for declaratory and/or injunctive relief*.

Nelson v. Hawaiian Homes Comm'n, 130 Hawaiʻi 162, 170, 307 P.3d 142, 150 (2013) (emphasis added) (cleaned up) (quoting Sierra

Club v. Haw. Dep't of Transp., 120 Hawaiʻi 181, 229 n.30, 202 P.3d 1226, 1274 n.30 (2009)); see also Gold Coast Neighborhood Ass'n v. State, 140 Hawaiʻi 437, 466-67, 403 P.3d 214, 243-44 (2017) (denying claim for attorneys fees against State under private attorney general doctrine where plaintiff sought declaratory relief over State's responsibility to maintain seawall); Kaleikini v. Yoshioka, 129 Hawaiʻi 454, 468, 304 P.3d 252, 266 (2013) (disallowing claim for attorneys fees against State under private attorney general doctrine because statutory provision allowing declaratory or injunctive relief is not a waiver of the State's sovereign immunity, but an exception to sovereign immunity doctrine for which no waiver is necessary).

Beach Lot Owners cite Sierra Club, but attorneys fees were awarded in that case because Sierra Club's claim was brought under HRS § 343-7, which waived the State's sovereign immunity against suits over environmental assessments and environmental impact statements. Id. at 228, 202 P.3d at 1273. Beach Lot Owners did not seek relief under HRS § 343-7.

Beach Lot Owners also cite HRS § 661-5, the statute of limitations for claims against the State under HRS Chapter 661. See Maunalua Bay, 122 Hawaiʻi at 51 n.12, 222 P.3d at 458 n.12. HRS § 661-1 waives sovereign immunity for claims against the State under article I, section 20 of the Hawaiʻi Constitution, which states: "Private property shall not be taken or damaged for public use without just compensation." A claim under Haw. Const. art. I, § 20 seeks compensation for something the government has

15

the right to do. DW Aina Leʻa Dev., LLC, 148 Hawaiʻi at 404, 477 P.3d at 844. The circuit court found that just compensation for Act 73's temporary taking of the Accreted Land was $0. The only claim on which Beach Lot Owners prevailed (partially) was one for declaratory relief. But their claim for attorneys fees against the State for obtaining declaratory relief is barred by sovereign immunity. Nelson, 130 Hawaiʻi at 170, 307 P.3d at 150.

**(2)  Beach Lot Owners did not satisfy the legal test.** Even if sovereign immunity had not barred Beach Lot Owners' claim for attorneys fees, they did not satisfy the legal test. Courts consider three factors to determine whether the private attorney general doctrine applies:

> (1)  the strength or societal importance of the public policy vindicated by the litigation,
>
> (2)  the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, and
>
> (3)  the number of people standing to benefit from the decision.

Pub. Access Trails Haw., 153 Hawaiʻi at 22, 526 P.3d at 547 (cleaned up) (reformatted).

**(a)**  A case vindicates public policy of strong or societal importance when "all of the citizens of the state, present and future, [stand] to benefit from the decision." In re Water Use Permit Applications, 96 Hawaiʻi 27, 31, 25 P.3d 802, 806 (2001). The circuit court certified a plaintiff class for its declaratory ruling, but the record isn't clear about how many people the plaintiff class actually encompasses. Or whether

there are actually any class members other than the Beach Lot Owners.

Land in Portlock was awarded to Princess Victoria **Kamāmalu**[11] as Land Commission Award 7713, ʻĀpana,[12] and passed from her to Princess Bernice Pauahi Pākī **Bishop** (great-granddaughter of Kamehameha I).[13] Bishop's estate owned the land during the twentieth century.[14] Beach Lot Owners and the State disagreed about the location of the shoreline boundary in the land commission award, and whether or when any part of the Beach Lots was awarded to Kamāmalu. The State stipulated on remand that Beach Lot Owners owned the Beach Lots and the Accreted Land. That stipulation binds us. But under Hawaiʻi common law the boundary between private oceanfront property and public beach property is marked by "the debris line or vegetation line, whichever is furthest mauka [(inland).]" Diamond v. Dobbin, 132 Hawaiʻi 9, 31, 319 P.3d 1017, 1039 (2014) (citation omitted). That is so "notwithstanding that the deed for the oceanfront property describes the property by 'certain distances and

---

[11] See Victoria Kamāmalu, Hawaiʻi Dept. of Acct. and Gen. Servs., https://ags.hawaii.gov/archives/online-exhibitions/centennial-exhibit/victoria-kamamalu [https://perma.cc/5FAU-WZYX] (last visited Mar. 11, 2024).

[12] "ʻĀpana" is defined as a "[p]iece, slice, portion, fragment, section, segment, installment, part, land parcel, lot, district, sector, ward, precinct[.]" Makila Land Co. v. Kapu, 152 Hawaiʻi 112, 115 n.5, 522 P.3d 259, 262 n.5 (2022).

[13] See About Pauahi, Kamehameha Schools, https://www.ksbe.edu/about-us/about-pauahi [https://perma.cc/3QMP-V8KT] (last visited Mar. 11, 2024).

[14] See First Amended and Supplemental Stipulation of Facts at ¶18, Maunalua Bay Beach Ohana 28 v. State, Judiciary Information Management System, (No. 185 Civ. 1CC051000904).

azimuths' that put the seaward boundary of the property below the high-water mark[.]" Maunalua Bay, 122 Hawaiʻi at 46, 222 P.3d at 453. Ordinarily, an owner of beachfront property would not own land makai (seaward) of the debris or vegetation line (whichever is further mauka), no matter what the deed's property description states. If land accretes to property makai of that line, the beachfront property owner would not own the accreted land. Of the class certification, we noted:

> While certification of a class for purposes of determining generically whether Act 73 effectuated a taking of littoral owners' future accretions might have been appropriate, we have questions about whether the class certification was proper for determining whether Act 73 effectuated a taking of those accretions existing as of the effective date of Act 73, since each littoral owner's factual situation regarding existing accretions would be different and not conducive to class adjudication.

Id. at 55-56, 222 P.3d at 462-63.

At any rate, Beach Lot Owners vindicated private, not public, interests — those of people (if any) who owned property makai of the highest reach of the highest wash of the waves, to which unregistered land accreted between May 20, 2003 and April 23, 2012. The class comprises far less than "all of the citizens of the state, present and future[.]" The public interest calls for the beaches of Hawaiʻi to be available for use by all citizens of the state, present and future, not just to a few private beach owners. See Application of Ashford, 50 Haw. 314, 315, 440 P.2d 76, 77 (1968) (holding that the seaward boundary of private property "is along the upper reaches of the wash of waves, usually evidenced by the edge of vegetation or by the line

of debris left by the wash of waves"); <u>County of Hawaii v. Sotomura</u>, 55 Haw. 176, 181-82, 517 P.2d 57, 61-62 (1973) (noting that "[t]he <u>Ashford</u> decision was a judicial recognition of long-standing public use of Hawaii's beaches to an easily recognizable boundary that has ripened into a customary right. Public policy, as interpreted by this court, favors extending to public use and ownership as much of Hawaii's shoreline as is reasonably possible." (citation omitted)). The first factor for application of the private attorney general doctrine was not satisfied.

**(b)** The second factor involves "the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff[.]" <u>Pub. Access Trails Haw.</u>, 153 Hawaiʻi at 22, 526 P.3d at 547. The supreme court has explained:

> In the complex society in which we live it frequently occurs that citizens in great numbers and across a broad spectrum have interests in common. These, while of enormous significance to the society as a whole, do not involve the fortunes of a single individual to the extent necessary to encourage their private vindication in the courts.

<u>In re Water Use Permit Applications</u>, 96 Hawaiʻi at 30, 25 P.3d at 805 (citation omitted). Beach Lot Owners argue that "the costs of litigating for more than a dozen years against the vast resources of the State of Hawaiʻi dwarfs the potential recovery of any individual non-governmental beachfront property owner." But Beach Lot Owners sought compensation of more than $6 million — $695,467.77 for the year beginning May 19, 2003 (based on Sofos' opinion of fair rental value), going up two percent each year for eight years, plus interest. This obviously is not a

case where no single person would have an incentive to sue the State for compensation under Act 73. The second factor was not satisfied.

   **(c)** The third factor is "the number of people standing to benefit from the decision." Pub. Access Trails Haw., 153 Hawaiʻi at 22, 526 P.3d at 547. The number of people who would actually qualify as members of the plaintiff declaratory class is not shown, or even approximated, in the record. We question whether such a plaintiff class could legally exist, in light of Ashford and Sotomura. See Maunalua Bay, 122 Hawaiʻi at 46, 222 P.3d at 453. Beach Lot Owners' declaratory judgment did not benefit "all of the citizens of the state, present and future[.]" In re Water Use Permit Applications, 96 Hawaiʻi at 31, 25 P.3d at 806. The third factor was not satisfied.

   **E.**  **The circuit court did not abuse its discretion by denying certification of a damages class.**

   Beach Lot Owners sought certification of a damages class under HRCP Rule 23(b)(2), (3). The rule provides:

>   **(b)**  **Class actions maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
>   . . . .
>
>   (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final *injunctive relief* or corresponding *declaratory relief* with respect to the class as a whole; or
>
>   (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The

> matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

(Emphasis added.)

Beach Lot Owners sought to certify a damages class consisting of:

> All private owners of oceanfront property in the State of Hawaiʻi who, **as of May 19, 2003**, owned accreted land that had not previously been recorded or registered and that was not, on that date, the subject of a then-pending registration or quiet title proceeding.

(Emphasis added.)  Beach Lot Owners acquired the Beach Lots on May 6, 2005.  They were not members of the class they sought to certify.  For this reason alone, the circuit court did not abuse its discretion in denying class certification.

A prerequisite under HRCP Rule 23(b)(2) "is that final injunctive or declaratory relief must be requested against the party opposing the class."  7AA Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1775 (3d. ed. updated Apr. 2023).  A claim for money damages does not qualify for class certification under HRCP Rule 23(b)(2).  <u>Id.</u>  Nor does a claim for just compensation, which is not a claim for injunctive or declaratory relief.

Members of an HRCP Rule 23(b)(3) class must be notified of their option to be excluded from the class.  HRCP Rule 23(c)(2).  The circuit court ruled:

Second, Rule 23(b)(3), unlike Rule 23(b)(2), requires notice to the class members and an opportunity to opt out. Thus, the members of a Rule 23(b)(3) class must be ascertainable. The proposed class here is not readily ascertainable. [Beach Lot Owners'] proposal to use tax map data and recorded documents with the Land Court and Bureau of Conveyances will be difficult to access and will not account for resolutions of disputes in ownership. Marcus v. BMW of North America, LLC, 687 F.3d 583, 591 (3rd Cir. 2012) ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.").

Third, land is unique and there will be individualized issues as to the claim for compensation and the right of the State to raise individual challenges and defenses to the claims. [Beach Lot Owners] proposal to determine damages based on regional groupings does not take into consideration variations in individual properties.

Fourth, [Beach Lot Owners] presented a method to determine the area of accreted land on the islands of [Kaua'i], [O'ahu] and Maui, but there is no method presented to determine the area of accreted land on the islands of Hawai'i, [Moloka'i], [Lāna'i], and [Ni'ihau]. The proposed class is for all private owners of oceanfront property in the State of Hawai'i, but the studies suggested by the [Beach Lot Owners] to be used to determine the accreted land do not include the entire state.

Fifth, Dr. Charles Fletcher, the lead author of the shoreline change study that [Beach Lot Owners] propose to use to determine the area of accreted land, stated in his declaration that the material is not suitable for the use proposed by [Beach Lot Owners].

Under these circumstances, we cannot say the circuit court abused its discretion by denying certification of a damages class.

**F.  The circuit court's conclusion that the State was the prevailing party is not material to the issues presented by this appeal.**

The circuit court ruled that the State was the prevailing party in the action below. The ruling let the State move for costs under HRCP Rule 54(d)(1). But the State's motion for costs was also based on the State having served an HRCP Rule 68 offer of settlement for $5,000, to which Beach Lot Owners

22

did not respond. Beach Lot Owners recovered no compensation. Under HRCP Rule 68, Beach Lot Owners "must pay the costs incurred after the making of the offer" of settlement. The State was entitled to costs under HRCP Rule 68 whether or not it was the prevailing party. Beach Lot Owners make no other argument about why the circuit court's ruling that the State was the prevailing party is material to this appeal. We need not decide the issue.

## IV. CONCLUSION

For these reasons, we hold: **(1)** the law of the case doctrine did not prevent the circuit court from considering a change in the controlling legislation enacted after we decided Maunalua Bay; **(2)** the circuit court's finding that just compensation was $0 was not clearly erroneous; **(3)** Beach Lot Owners were not entitled to nominal damages; **(4)** Beach Lot Owners were not entitled to attorneys fees; **(5)** the circuit court did not abuse its discretion by denying certification of a damages class; and **(6)** the circuit court's determination that the State was the prevailing party is moot. We affirm the circuit court's Final Judgment entered on October 2, 2019.

On the briefs:

Paul Alston,
Claire Wong Black,
for Plaintiffs-Appellants/
Cross-Appellees.

David D. Day,
William J. Wynhoff,
Deputy Attorneys General,
State of Hawaiʻi,

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

for Defendant-Appellee/
Cross-Appellant.