**\*\*\* FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-19-0000776
17-SEP-2025
12:49 PM
Dkt. 36 OPA**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

MAUNALUA BAY BEACH OHANA 28, a Hawaiʻi Non-Profit Corporation;
MAUNALUA BAY BEACH OHANA 29, a Hawaiʻi Non-Profit Corporation;
and MAUNALUA BAY BEACH OHANA 38, a Hawaiʻi Non-Profit
Corporation, individually and on behalf of all others similarly
situated,
Petitioners/Plaintiffs-Appellants/Cross-Appellees,

vs.

STATE OF HAWAIʻI,
Respondent/Defendant-Appellee/Cross-Appellant.

SCWC-19-0000776

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-19-0000776; CASE NO. 1CC051000904)

SEPTEMBER 17, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, AND DEVENS, JJ.,
AND CIRCUIT JUDGE KIMURA IN PLACE OF GINOZA, J., RECUSED

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I. INTRODUCTION

This case involves the temporary taking of accreted beachfront land located in the Portlock neighborhood of East Honolulu, Oʻahu. The Petitioners, Maunalua Bay Beach Ohana 28, Maunalua Bay Beach Ohana 29, and Maunalua Bay Beach Ohana 38 (collectively "the Ohanas"), are three non-profit corporations, organized by littoral homeowners, to purchase and own narrow strips of land (beach reserve lots) that separate their properties from the publicly owned beach. The Ohanas prevailed before the Circuit Court of the First Circuit (circuit court) and the Intermediate Court of Appeals (ICA) in the underlying suit, establishing that Act 73, a state law that declared certain accreted lands to be public lands, effectuated an uncompensated taking in violation of article I, section 20 of the Hawaiʻi Constitution.

On remand, the sole issue before the circuit court was the amount of just compensation owed to the Ohanas for the temporary taking of their property pursuant to the statute. Following a jury waived trial, the circuit court determined that the Petitioners were not entitled to any compensation for the temporary taking, given that the land accreted to the beach reserve lots had no fair market rental value. The Petitioners

challenge the circuit court's award of zero dollars in just compensation and its failure to award nominal damages. We conclude that the circuit court did not err when it (1) determined that, for purposes of just compensation, the fair market rental value of the accreted land was zero dollars, and (2) declined to award nominal damages.

The Ohanas also challenge the circuit court's denial of their motion for attorneys' fees under the private attorney general doctrine. Whether article I, section 20 of the Hawaiʻi Constitution waives sovereign immunity in inverse condemnation cases is a question of first impression before this court.[1] Because our just compensation clause does not contemplate attorneys' fees, we hold that an award of attorneys' fees against the State is barred by sovereign immunity. In so doing, we join the unanimous position of other states that have considered the issue.

Accordingly, we affirm the circuit court and the ICA.

## II. BACKGROUND

In 2003, the Legislature passed and the governor signed into law Act 73, which expanded the definition of public

---

[1] "Inverse condemnation" involves "[a]n action brought by a property owner for compensation from a governmental entity that has taken the owner's property without bringing formal condemnation proceedings." Condemnation, Black's Law Dictionary (12th ed. 2024).

lands to include "accreted lands not otherwise awarded."[2]  2003 Haw. Sess. Laws Act 73, at 128-30 (amending Hawaiʻi Revised Statutes (HRS) §§ 171-1, -2, 501-33, and 669-1 (eff. May 20, 2003)).  Act 73 prevented anyone other than the State from registering or quieting title to accreted lands, except where that accretion restored eroded lands.  Id.

On May 6, 2005, the Ohanas purchased three beach reserve lots from the Estate of Bernice Pauahi Bishop dba Kamehameha Schools for $1,000 per lot.[3]  Each of these Ohanas was formed as a non-profit corporation by its members, the littoral homeowners, "for the specific and sole purpose of owning one of the beach reserve lots," which are narrow strips of beach that front the littoral homeowners' lots and separate the homeowners' lots from the ocean.  As the ICA explained in Maunalua Bay Beach Ohana 28 v. State (Maunalua Bay I), 122 Hawaiʻi 34, 35 n.1, 222 P.3d 441, 442 n.1 (App. 2009):

> The oceanfront lots underlying the Portlock homes were originally owned and developed in leasehold by the Trustees of the Estate of Bernice Pauahi Bishop (Bishop Estate). The lease for each oceanfront lot described the lot by specific metes and bounds.  The leases did not include a

---

[2]     Section 1 of Act 73 amended HRS § 171-1, defining accreted lands as "lands formed by the gradual accumulation of land on a beach or shore along the ocean by the action of natural forces."

[3]     The record reflects that the land was originally awarded to Crown Princess and Kuhina Nui Victoria Kamāmalu as Land Commission Award 7713, Apana, and that it subsequently passed to Bernice Pauahi Bishop and, eventually, her estate.

4

narrow strip of land between the lot and the ocean, which Bishop Estate reserved for itself (beach-reserve lot). In the late 1980's or early 1990's, Bishop Estate sold its fee interest in the oceanfront lots to the Portlock homeowners but reserved its fee interest in the beach-reserve lots. On May 6, 2005, Bishop Estate sold to [Ohanas] the beach-reserve lots that adjoined the lots of [Ohanas]'s respective homeowner members. Pursuant to the deeds for the beach reserve lots, Bishop Estate reserved access and utility easements for itself, together with the right to grant easements over the lots to government agencies and public utilities; Plaintiffs agreed to continue to allow the public to use the beach-reserve lots "for access, customary beach activities and related recreational and community purposes"; and Plaintiffs accepted numerous restrictive covenants that ran with the lots.

On May 19, 2005, less than two weeks after the purchase and one day before the statute of limitations expired,[4] the Ohanas brought an inverse condemnation action in the circuit court, alleging that Act 73 effected an uncompensated and therefore unconstitutional taking of land accreted to the beach reserve lots ("makai land")[5] and seeking declaratory and injunctive relief and money damages. Id. at 51-52, 222 P.3d at 458-59.

The makai land did not accrete to the homeowners' lots directly, but rather to the beach reserve lots, which are owned

---

[4]    HRS § 661-5 (1993), "Limitations on action," provided in relevant part, "Every claim against the State, cognizable under this chapter, shall be forever barred unless the action is commenced within two years after the claim first accrues[.]"

[5]    The beach reserve lots are a strip of sandy beach between the littoral homeowners' properties and the water. As of May 19, 2003, sand accreted to the makai, or seaward, side of the beach reserve lots, extending the beach toward the ocean. Here, the "makai land" refers to the accreted land seaward of the beach reserve lots.

by the Ohanas and not the littoral homeowners individually. As of May 19, 2003, the area of the three beach reserve lots as described by metes and bounds in the deeds, taken together, was 48,813 square feet (1.121 acres), including: 15,016 square feet for tax map key lot 3-9-02-29; 17,123 square feet for tax map key lot 3-9-03-28; and 16,674 square feet for tax map key lot 3-9-04-38. As of that same date, the makai land consisted of a total of 70,750 square feet (1.624 acres) of accreted land, including: 34,179 square feet accreted to tax map key lot 3-9-02-29; 33,844 square feet accreted to tax map key lot 3-9-03-28; and 2,727 square feet accreted to tax map key lot 3-9-04-38.

The Ohanas moved for partial summary judgment on their claim for injunctive relief to bar the State from enforcing Act 73 absent just compensation. Id. at 51, 222 P.3d at 458. The circuit court[6] granted the Ohanas' motion and the ICA affirmed in part on interlocutory appeal, holding that "Act 73 effectuated a permanent taking of littoral owners' ownership rights to existing accretions to the owners' oceanfront properties that had not been registered or recorded or made the subject of a then-pending quiet-title lawsuit or petition to register the

---

[6] The Honorable Eden Elizabeth Hifo presided.

accretions."[7]  Maunalua Bay I, 122 Hawaiʻi at 57, 222 P.3d at 464.

In 2012, in response to the ICA's ruling on Act 73, the Legislature passed and the governor signed into law Act 56, which redefined public lands to include only those "lands accreted after May 20, 2003."  2012 Haw. Sess. Laws Act 56, at 122-23 (amending HRS §§ 171-2, 501-33, and 669-1 (eff. Apr. 23, 2012)).

On remand, the Ohanas and the State stipulated to the existence of the makai lands such that

> The only issues in this case at present are whether Act 73 effected and Act 56 ended a temporary taking of any accreted lands from May 19, 2003, to April 23, 2012 (or any part of that time) and if so the amount of just compensation, if any, that is due to plaintiffs for the taking.  The amount of just compensation, if any, may take into account any offset, set off, or recoupment.

The parties also stipulated to how just compensation would be calculated on remand:

> 7.  Just compensation, if any, shall be based on the fair rental value of the accreted land as of May 19, 2003, but taking into account restrictions on plaintiffs' use of the property, if appropriate.  Rental shall be considered to have been due, in advance, on May 19 of each respective year.  The period May 19, 2011, to April 23, 2012, shall be pro-rated.

---

[7]     The ICA vacated the circuit court's grant of partial summary judgment to the extent that it "concluded that Act 73 took from oceanfront owners their property rights in all future accretion that was not proven to be the restored portion of previously eroded land" because the Ohanas "had no vested property rights to future accretions to their oceanfront land and, therefore, Act 73 did not effect an uncompensated taking of future accretions."  Maunalua Bay I, 122 Hawaiʻi at 57, 222 P.3d at 464.

8. The rent, if any, for any succeeding year shall be based on the rent as of May 19, 2003, increased by 2% each succeeding year.

9. All unpaid amounts of just compensation shall bear simple interest at 5% per annum from the date due to the date of judgment.

After a jury-waived trial, at which expert witnesses presented competing valuations of the makai lands, the circuit court[8] entered detailed Findings of Fact, Conclusions of Law, and Decision and Order on November 28, 2018. The circuit court concluded that the Ohanas were entitled to just compensation for the temporary taking of the makai land between the passage of Act 73 and Act 56, but that just compensation equal to the fair market rental value of the makai land was zero dollars. The circuit court credited the testimony of the State's expert witness, Craig Leong, that the makai lands had no reasonable rental value. Based on Leong's testimony, the circuit court found:

108. Mr. Leong based his conclusion on highest-and-best use on, among other things, the irregular shapes and narrow widths of the parcels; limited access; conservation-district regulations; the restrictive covenants in the [Estate of Bernice Pauahi Bishop] deeds to plaintiffs; the State's non-interference with plaintiffs use; the lack of any history of financial gain from the makai land, and the fact that [the Estate of Bernice Pauahi Bishop] sold the three beach reserve lots for $1,000 each. The Court finds that Mr. Leong's analysis is credible.

---

[8] The Honorable Virginia L. Crandall presided.

109. The Court agrees with Mr. Leong's conclusion: "Given the highly irregular, and narrow property characteristics of the accreted land, and after consideration of the restricted street access to the subject property, and perhaps, more importantly, as both government and private land use regulations and covenants restrict the legally permissible use of the accreted land area to public access, customary beach activities, and related recreational and community purposes, the appraiser concludes that no known market buyer exists for the subject accreted land."

110. Mr. Leong concludes that there was a $0 market rent attributable to the land with a retrospective date of 2003.

111. The Court finds Mr. Leong's ultimate conclusion of value to be credible, logical, and well founded. The Court finds that the fair market rent as of May 2003 was $0.

(Record citations omitted.)

Conversely, the circuit court found the Ohanas' expert witness, Stephany Sofos, not credible and therefore "[gave] no weight to her testimony." The circuit court noted, among other errors, that "Ms. Sofos's report is premised on her belief that both the original beach reserve lots and the makai land were taken by the State. This is a faulty premise that is fatal to her analysis." Sofos erroneously valued the taking of the makai lands based on accretion to the littoral residence lots, not the beach reserve lots. Thus, the circuit court found that "Ms. Sofos's proposed values are incredible on their face."

The circuit court further concluded that "[p]roviding any compensation to [the Ohanas'] in this case would be nothing short of a windfall, given the State's non-interference with [the Ohanas'] use of the makai land and the absence of any

financial impact on the plaintiffs."  Therefore, the circuit court declined to award even nominal damages.

Following entry of the circuit court's decision and order, the Ohanas moved for attorneys' fees under the private attorney general doctrine as the prevailing party both in the appeal of the Ohanas' motion for partial summary judgment before the ICA and at trial when the circuit court determined that they were entitled to just compensation.  The Ohanas argued that they were entitled to fees under the private attorney general doctrine because: (1) the Ohanas vindicated an important public policy by establishing that Act 73 effected an uncompensated taking; (2) private enforcement was necessary and burdensome, resulting in protracted litigation against the "vast resources of the State"; and (3) the litigation conferred a significant benefit to "the public at large by putting the legislature on notice regarding legislative takings of land."

The State opposed, arguing that, not only were the Ohanas not entitled to attorneys' fees under the private attorney general doctrine, but also that any such award was barred by sovereign immunity.

Following supplemental briefing on the sole issue of whether the State waived sovereign immunity when it conceded subject matter jurisdiction, the circuit court summarily denied

10

the Ohanas' motion.  The circuit court then entered final judgment in favor of the State.

The Ohanas appealed the final judgment, alleging multiple errors.[9]  As is relevant here, the Ohanas challenged the circuit court's finding that (1) zero dollars was just compensation for the temporary taking of the makai lands, and (2) the Ohanas were not entitled to nominal damages.  The Ohanas also challenged (3) the denial of attorneys' fees under the private attorney general doctrine.

The ICA affirmed in <u>Maunalua Bay Beach Ohana 28 v. State</u> (<u>Maunalua Bay II</u>), 154 Hawaiʻi 144, 547 P.3d 1174 (2024).  First, the ICA concluded that, to the extent that the Ohanas did not waive alleged errors for failure to argue points raised regarding the circuit court's finding that the Ohanas were entitled to just compensation in the amount of zero dollars, the findings were supported by substantial evidence and therefore not clearly erroneous.  <u>Id.</u> at 152, 547 P.3d at 1182.  Next, the ICA concluded that because just compensation was zero dollars, the Ohanas did not suffer any "technical injury" from the temporary taking that would entitle the Ohanas to nominal

---

[9]     The State cross-appealed, challenging the circuit court's decision and order.  That appeal is not at issue before this court.

damages.  Id. (quoting Kanahele v. Han, 125 Hawai\`i 466, 457-58, 263 P.3d 726, 737-38 (2011)).  Finally, the ICA concluded that although the Ohanas failed to satisfy any of the three prongs of the private attorney general doctrine and so were not entitled to attorneys' fees for any portion of the litigation, an award of attorneys' fees would have been barred by sovereign immunity.  Id. at 152-55, 547 P.3d at 1182-1185.

> HRS § 661-1 [(1993)] waives sovereign immunity for claims against the State under article I, section 20 of the Hawai\`i Constitution, which states: "Private property shall not be taken or damaged for public use without just compensation."  A claim under Haw. Const. art. I, § 20 seeks compensation for something the government has the right to do.  The circuit court found that just compensation for Act 73's temporary taking of the [makai land] was $0.  The only claim on which [the Ohanas] prevailed (partially) was one for declaratory relief.  But their claim for attorneys['] fees against the State for obtaining declaratory relief is barred by sovereign immunity.

Id. at 153, 547 P.3d at 1183 (citing DW Aina Le\`a Dev., LLC v. State Land Use Comm'n, 148 Hawai\`i 396, 404, 477 P.3d 836, 844 (2020); Nelson v. Hawaiian Homes Comm'n, 130 Hawai\`i 162, 170, 307 P.3d 142, 150 (2013)).

The Ohanas sought certiorari review by this court, which we granted.

### III.  STANDARDS OF REVIEW

### A.  Award of Attorneys' Fees

"The trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard."

12

Sierra Club v. Dep't of Transp. (Superferry II), 120 Hawaiʻi 181, 197, 202 P.3d 1226, 1242 (2009) (brackets and citation omitted).

## B.   Constitutional Interpretation

"Issues of constitutional interpretation present questions of law that are reviewed de novo."  Id. at 196, 202 P.3d at 1241 (quoting Blair v. Harris, 98 Hawaiʻi 176, 178, 45 P.3d 789, 800 (2002)).

## C.   Findings of Fact and Conclusions of Law

> [T]his court reviews the trial court's findings of fact under the clearly erroneous standard.
>
> A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed.  A finding of fact is also clearly erroneous when the record lacks substantial evidence to support the finding.  We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Bremer v. Weeks, 104 Hawaiʻi 43, 51, 85 P.3d 150, 158 (2004) (citations omitted).

## IV.   DISCUSSION

The Ohanas present two questions before this court:

> 1.  Where the State completely divests oceanfront property owners of their ownership of accreted land, is just compensation of zero dollars with no nominal or severance damages awarded for the unconstitutional taking of more than 70,000 square feet of beachfront land over a period of nine years consistent with Hawaiʻi's constitutional mandate that just compensation be paid for taking or damaging private property for public use?  Haw. Const. art. I, § 20 ("Private property shall not be taken or damaged for public use without just compensation.") (emphasis added).

13

2.   Where Petitioners vindicated the constitutional rights of littoral owners across Hawaiʻi, caused the repeal of an unconstitutional statute, and litigated the constitutional right to just compensation for nearly two decades, did the ICA grievously err in holding that Petitioners were not entitled to attorneys' fees under the private attorney general doctrine?

We address each question in turn.

**A.   The Circuit Court Did Not Clearly Err When It Awarded the Ohanas Zero Dollars in Just Compensation with No Nominal or Severance Damages for the Temporary Taking of the Ohanas' Accreted Lands**

**1.   The circuit court's findings of fact were not clearly erroneous because they were supported by substantial evidence**

Act 73 effectuated a taking of the Ohanas' accreted lands.  Maunalua Bay I, 122 Hawaiʻi at 57, 222 P.3d at 464. Under article I, section 20 of the Hawaiʻi Constitution, "Private property shall not be taken or damaged for public use without just compensation."

On remand, the Ohanas and the State stipulated that just compensation would be calculated based on the fair market rental value of the property as of May 19, 2003, and increasing 2% yearly, plus interest.  **[Stip. at 3, CC Dkt. 185:5]**

After hearing testimony from dueling experts as to the fair rental value of the property, the court determined that the Ohanas were entitled to just compensation in the amount of zero dollars.  "For all reasons set forth in the findings of fact, including the credible testimony of Mr. Leong, the Court finds

that the fair market rent for the makai land not otherwise awarded, if any, on May 19, 2003 was $0."

The Ohanas challenge the circuit court's award of zero dollars in just compensation for the temporary taking of 1.624 acres of land accreted to the beach front property for the period between May 19, 2003, and April 23, 2012. Because we conclude that the circuit court's finding was supported by substantial evidence and was therefore not clearly erroneous, we affirm. See Bremer, 104 Hawaiʻi at 51, 85 P.3d at 158. "We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id.

The Ohanas argue that the circuit court improperly rejected the testimony of their valuation expert, Stephany Sofos, a licensed real estate broker and certified general appraiser licensed in the State of Hawaiʻi, alleging the circuit court ignored evidence that Sofos employed a methodology approved by the State Board of Land & Natural Resources to determine rental rates for private noncommercial piers for littoral landowners in Kāneʻohe Bay. To the extent that the Ohanas ask this court to second guess the circuit court's evaluation of credibility, we decline to do so. See Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) ("An

15

appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the fact finder.").

The circuit court found that Sofos's report, which was not an "appraisal report," was not credible as to the valuation of the accreted lands because it was based on a "faulty premise that is fatal to her analysis" as her valuation was premised on a taking both of the accreted land and the beach reserve lots, whereas only the accreted land was taken. Further, the circuit court concluded that Sofos "fundamentally misunderstood" her proposed evaluation method, the "Kaneʻohe Bay methodology." The circuit court also noted that Sofos's valuations were "incredible on their face" and that the data she relied upon was "unreliable" as she "did not verify [its] accuracy." Therefore, the circuit court "did not find Ms. Sofos to be a credible witness" and "[gave] no weight to her testimony."

Conversely, the circuit court gave full credit to the State's expert witness, Craig Leong, an appraiser licensed in the State of Hawaiʻi with designations both as certified general appraiser and as a member of the Appraisal Institute.[10] The

---

[10] "The Appraisal Institute is the leading profession association of real estate appraisers" and was created "to help standardize the appraisal process by promoting professional education and upholding high ethical

(. . . continued)

circuit court found credible Leong's conclusion that the "highest and best use for the makai land 'as of the retrospective periods beginning May 2003 through April 2012 was for public access, customary beach activities and related recreational and community purposes.'"  The court further found the accreted land had limited commercial rental value:

> The Court agrees with Mr. Leong's conclusion: "Given the highly irregular, and narrow property characteristics of the accreted land, and after consideration of the restricted street access to the subject property, and perhaps, more importantly, as both government and private land use regulations and covenants restrict the legally permissible use of the accreted land area to public access, customary beach activities, and related recreational and community purposes, the appraiser concludes that no known market buyer exists for the subject accreted land."

(Emphasis added.)

Given these restrictions, the circuit court found Leong's conclusion that the fair market value of the accrete lands was zero dollars "credible, logical, and well founded."

On this record, we conclude that there was evidence of "sufficient quality and probative value to enable a person of reasonable caution" to conclude that the fair rental value of the accreted lands, including yearly appreciation and simple interest, is zero dollars.  See Bremer, 104 Hawaiʻi at 51, 85

---

standards."  Who We Are and What We Stand For, Appraisal Institute, https://www.appraisalinstitute.org/about/ [https://perma.cc/7YWW-K97C].

P.3d at 158.  The circuit court's findings were supported by
substantial evidence and were properly affirmed by the ICA.

> **2.  The circuit court did not err in concluding that the Ohanas are not entitled to nominal damages**

We turn now to whether, in the context of a taking
whose just compensation amounts of zero dollars, the Ohanas are
entitled to nominal damages.

We have stated generally in civil cases:

> While compensatory damages seek to restore a
> plaintiff to his or her position prior to the tortious act,
> nominal damages are a small and trivial sum awarded for a
> technical injury due to a violation of some legal right and
> as a consequence of which some damages must be awarded to
> determine the right.

Kanahele, 125 Hawaiʻi at 457–58, 263 P.3d at 737–38 (brackets,
internal quotation marks, and citation omitted); see Damages,
Black's Law Dictionary (12th ed. 2024) (defining "nominal
damages" as, inter alia, "[a] trifling sum awarded when a legal
injury is suffered but there is no substantial loss or injury to
be compensated").

"'Nominal damages means no damages at all,' and are
but 'a mere peg to hang costs on[.]'"  Kanahele, 125 Hawaiʻi at
458, 263 P.3d at 738 (first quoting Hall v. Cornett, 240 P.2d
231, 235 (Or. 1952); then Ferreira v. Honolulu Star-Bulletin, 44
Haw. 567, 579, 356 P.2d 651, 658 (1960)) (internal citations
omitted).

Courts in some jurisdictions have explained that "[w]here an owner is unable to prove that the taking or damaging of property by a governmental entity has caused him any economic injury, he is entitled to recover only nominal damages." City of Los Angeles v. Ricards, 515 P.2d 585, 588 n.4 (Cal. 1973); see also Heuer v. City of Cape Girardeau, 370 S.W.3d 903, 916 (Mo. Ct. App. 2012) (concluding that although plaintiff "concedes he did not make the requisite showing to prove the amount of his damages for inverse condemnation, but because the City unreasonably violated his right to ingress and egress, we find he is entitled to nominal damages"); Keene Valley Ventures, Inc. v. City of Richland, 298 P.3d 121, 123, 126 (Wash. Ct. App. 2013) (holding that trial court properly awarded $1 in nominal damages when private party "proved trespass, nuisance, and inverse condemnation, but . . . the damage to the land was temporary . . . [and the private party] failed to prove that it had sustained damage").

Here, the Ohanas were able to prove that there was a temporary taking under article I, section 20 of the Hawaiʻi Constitution. Maunalua Bay I, 122 Hawaiʻi at 57, 222 P.3d at 464 ("Act 73 effectuated a permanent taking of littoral owners' ownership rights to existing accretions to the owners' oceanfront properties that had not been registered or recorded

19

or made the subject of a then-pending quiet-title lawsuit or petition to register the accretions."). "A takings claim seeks compensation for something the government is entitled to do; a taking is not a legal injury, but rather an entitlement to just compensation." See DW Aina Leʻa, 148 Hawaiʻi at 404, 477 P.3d at 844. As the ICA in Maunalua Bay II properly concluded, "[the Ohanas] did not sustain a 'technical injury due to a violation of some legal right[.]' Kanahele, 125 Hawaiʻi at 457–58, 263 P.3d at 737–38. They were not entitled to nominal damages." Maunalua Bay II, 154 Hawaiʻi at 152, 547 P.3d at 1182. Instead, the proper remedy for a takings claim is just compensation. DW Aina Leʻa, 148 Hawaiʻi at 404, 477 P.3d at 844.

As previously discussed, just compensation in this case was agreed by the parties to be the fair market rental value of the property at the time of the taking, to increase 2% yearly thereafter. **[CC Dkt. 185:5]** Based on expert testimony adduced at trial, the circuit court determined that the fair market rental value of accreted lands for the relevant period was zero dollars. Thus, the Ohanas were entitled to just compensation in the amount of zero dollars, and the circuit court did not err in concluding that the Ohanas are not entitled to nominal damages.

**B.    The ICA Properly Held That Attorneys' Fees Are Barred by Sovereign Immunity in Inverse Condemnation Cases**

The Ohanas request attorneys' fees through the private attorney general doctrine, arguing that they are entitled to fees because: (1) "[t]he Ohanas vindicated fundamental rights through this litigation," (2) of "the effort, resources, and time involved (two decades) that illustrates the magnitude of the burden of litigating against the State and the need to promote lawsuits that vindicate important public rights by awarding fees," and (3) the issues they raised in this litigation are consistent with the public interest.[11]  However, we must first resolve the threshold question of whether sovereign immunity bars the recovery of attorneys' fees against the State in inverse condemnation cases.[12]  See Nelson, 130 Hawaiʻi at 168, 307 P.3d at 148 (quoting Superferry II, 120

---

[11]     In Waiāhole II, we adopted a three-prong test to determine whether attorneys' fees should be awarded under the private attorney general doctrine: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision."  In re Water Use Permit Applications (Waiāhole II), 96 Hawaiʻi 27, 29, 25 P.3d 802, 804 (2001) (citing Serrano v. Priest, 569 P.2d 1303, 1314 (Cal. 1977) (en banc)).

[12]     The ICA concluded that sovereign immunity barred the recovery of attorneys' fees under the private attorney general doctrine, Maunalua Bay II, 154 Hawaiʻi at 152-53, 547 P.3d at 1182-83, but nevertheless went on to further determine that the Ohanas were not entitled to recover under the doctrine in any event, id. at 153-55, 547 P.3d at 1183-85.  Unlike the ICA, we do not reach the latter question, and note that the ICA's discussion of that issue is dicta.

Hawaiʻi at 221, 225-29, 307 P.3d at 1266, 1270-74) ("'Application of the private attorney general doctrine is . . . subject to the defenses which a defendant may have' . . . [including] the State's defense of sovereign immunity."). As discussed below, we conclude that recovery of attorneys' fees in inverse condemnation cases is barred by sovereign immunity.

1. **The State is immune to awards for attorneys' fees absent a "clear relinquishment" of sovereign immunity**

"It is well established that the State as sovereign is immune from suit except as it consents to be sued." Id. (quoting Figueroa v. State, 61 Haw. 369, 381, 604 P.2d 1198, 1205 (1979)). Absent a "clear relinquishment" of immunity and consent to be sued, "the sovereign State is immune from suit for money damages. . . . [U]nder our sovereign immunity doctrine, 'the crucial inquiry . . . is whether the relief sought for a past violation of law is "tantamount to an award of damages" or would merely have

an "ancillary" effect on the state treasury.'" Kahoʻohanohano v. State, 114 Hawaiʻi 302, 336, 162 P.3d 696, 730 (2007) (quoting Bush v. Watson, 81 Hawaiʻi 474, 481, 482 n.9, 918 P.2d 1130, 1137, 1138 n.9 (1996)) (emphasis in original omitted).

In Superferry II, we explained that awards of attorneys' fees against the State are subject to the sovereign immunity doctrine: "'an award of costs and fees to a prevailing

22

party is inherently in the nature of a damage award.' Accordingly, to properly award attorney's fees and costs against [the State] in this case, there must be 'a clear relinquishment' of the State's immunity." 120 Hawaiʻi at 226, 202 P.3d at 1271 (first quoting Fought & Co. v. Steel Eng'g & Erection, Inc., 87 Hawaiʻi 37, 51, 951 P.2d 487, 501 (1998); then citing Bush, 81 Hawaiʻi at 481, 918 P.2d at 1137) (internal citations omitted).

"[T]hat sovereign immunity was no bar to the underlying claim 'does not necessarily result in a right to attorneys' fees.'" Nelson, 130 Hawaiʻi at 168, 307 P.3d at 148 (quoting Taomae v. Lingle, 110 Hawaiʻi 327, 333, 132 P.3d 1238, 1244 (2006)). For example, in Nelson, a case brought against the State and State officials for failing to sufficiently fund the Department of Hawaiian Home Lands, we noted that sovereign immunity did not bar the underlying claims for declaratory and injunctive relief for constitutional violations, because "sovereign immunity will not be a bar where governmental action is challenged as unconstitutional." Id. (quoting Kahoʻohanohano, 114 Hawaiʻi at 337, 162 P.3d at 731 (citing Pele Def. Fund v. Paty, 73 Haw. 578, 607, 837 P.2d 1247, 1265 (1992))). However, we went on to hold that although the Nelson plaintiffs were able to seek declaratory and injunctive relief, they were not entitled to attorneys' fees under the private attorney general

doctrine because their constitutional claims were not founded upon any statute waiving sovereign immunity.  Id. at 171-73, 307 P.3d at 151-53 (citing Kahoʻohanohano, 114 Hawaiʻi at 338, 162 P.3d at 732) ("[C]onstitutional claims are not founded upon any statute and are therefore not cognizable under HRS § 661[-1(1)].").

2.   **Article I, section 20 does not waive sovereign immunity for attorneys' fees in inverse condemnation cases**

The Ohanas argue that the bar from recovery for money damages in suits for declaratory or injunctive relief is a "red herring" because, unlike cases like Nelson and Kahoʻohanohano, which were not suits for money damages, the Ohanas expressly sought money damages the instant case.  The Ohanas assert that "the State, by litigating the issue of damages, consented to suit."  Accordingly, the Ohanas argue that "Hawaiʻi's Takings Clause — by its own force — abrogates state sovereign immunity by allowing suits for money damages against the State where there has been a taking or damage to property without just compensation."[13]

---

[13]   The Ohanas point to Bridge Aina Leʻa v. Land Use Commission, Civ. No. 11-00414, 2018 WL 6705529 (D. Haw. Dec. 20, 2018), an unpublished decision from the United States District Court for the District of Hawaiʻi for the proposition that:

(. . . continued)

24

This court has not squarely addressed whether article I, section 20 of the Hawaiʻi Constitution waives sovereign immunity for attorneys' fees in inverse condemnation cases. However, we have held, "the Takings Clause of the Hawaiʻi Constitution contains self-executing language, enabling suits based on the provision itself without implementing legislation." DW Aina Leʻa, 148 Hawaiʻi at 403, 477 P.3d at 843.

In State v. Davis, we considered whether our Takings Clause waived sovereign immunity in direct condemnation actions. 53 Haw. 582, 499 P.2d 663 (1972). We concluded it did not. Id. at 587, 499 P.2d at 667-68. At the time, article I, section 18

---

"The [district c]ourt is unpersuaded by the [Land Use Commission's (LUC)] argument that the LUC is immune from as [sic] award of attorneys' fees under Hawaiʻi law," noting that the State cited no Hawaiʻi case law to support its claim that "Hawaiʻi courts have definitively stated that the State is immune from an award of attorneys' fees under the private-attorney-general doctrine."

(Quoting Bridge Aina Leʻa, 2018 WL 6705529, at *4-5).

Bridge Aina Leʻa involved a motion for attorneys' fees arising from the LUC's redesignation of the plaintiff's property from urban to agricultural use. Id. at *1. The district court concluded – and the LUC conceded - that, when the LUC removed the case to the federal district court, "it voluntarily invoked federal [supplemental] jurisdiction and waived its Eleventh Amendment immunity with respect to [the plaintiff]'s state and federal claims." Id. at *3. However, the LUC then challenged the award of fees under state sovereign immunity. The district court determined that the LUC had also waived a sovereign immunity defense as to attorneys' fees. Id. at *4-5.

Bridge Aina Leʻa is neither precedential nor binding on this court. To the extent that the Ohanas ask us to hold that the State waived sovereign immunity for purposes of attorneys' fees merely by litigating the amount of just compensation owed to the Ohanas, we decline to do so.

25

of the Hawaiʻi Constitution contained our Takings Clause, which provided "Private property shall not be taken for public use without just compensation."  Noting that the definition of just compensation adopted by this court "contains no reference to attorneys' fees or litigation costs,"[14] we held, "in accordance with the overwhelming weight of authority that attorneys' fees and expenses, including expert witness' fees, are not embraced within the meaning of 'just compensation' for purposes of article I, section 18 of the Hawaiʻi Constitution."  Davis, 53 Haw. at 587, 499 P.2d at 667-68.  In reaching this conclusion, we adopted the reasoning of the Supreme Court of Delaware, as stated in 9.88 Acres of Land v. State, 274 A.2d 139, 140 (Del. 1971):

> The argument is that the owner is deprived of 'just compensation' when it must expend a substantial portion of the award, founded upon fair market value of the property, for the necessary services of counsel and experts; and this

---

[14]    In Hawaiʻi Housing Authority v. Rodrigues, 43 Haw. 195 (Haw. Terr. 1959), this court adopted the definition of just compensation stated by in 4 Nichols, Eminent Domain §§ 12.2 and 12.2[1] (3d ed.):

> "It is well settled that, when a parcel of land is taken for public use by the exercise of the power of eminent domain, the measure of compensation is the fair market value of the land."

> "By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the land was adapted and might in reason be applied."

Rodrigues, 43 Haw. at 197  (citations omitted).

> is especially so, says the owner, when the final offer of the condemnor is greatly less than the value ultimately established.
>
> The argument appeals to the sense of fairness, but it has no tenable basis in constitutional law. . . .
>
> . . . [A]uthorities propound the rationale of fairness that may motivate legislative relief in this area; but they cast no doubt upon the force and effect of the general rule of constitutional law we here endorse: in the absence of statute, there is no right to counsel fees (and litigation costs) in condemnation cases, and the deprivation of such fees does not violate any constitutional right.
>
> If an adjustment in the law of eminent domain is dictated by fairness in this connection, it is a matter for consideration and action by the (legislature).

Davis, 53 Haw. at 587-88, 499 P.2d at 668 (ellipses and brackets in original).

This court did not address the whether then article I, section 18 waived sovereign immunity for attorneys' fees in inverse condemnation cases. Nonetheless, because our reasoning in Davis applies equally to direct condemnation and inverse condemnation cases, and in the absence of authority to the contrary, it would be incongruent to read just compensation to include inverse condemnation but not direct condemnation actions. We therefore conclude that the Hawaiʻi Constitution prior to the 1968 amendment had not waived sovereign immunity for attorneys' fees in inverse condemnation cases.

We now turn to whether the 1968 amendment of our Takings Clause to include "or damaged" constituted a waiver of sovereign immunity in that context. While it is clear that the

27

"or damaged" clause should be read broadly when determining whether an injury requires "just compensation," we conclude that that the inclusion of "or damaged" was insufficient to extend the self-executing waiver of sovereign immunity to the recovery of attorneys' fees in inverse condemnation actions.

As we explained in City and County of Honolulu ex rel. Honolulu Authority for Rapid Transportation v. Victoria Ward, Ltd., the proceedings of the 1968 Constitutional Convention make clear that the amendment of the Takings Clause to include "or damaged" was made to permit severance damages in response to the construction of the H-1 freeway, where neighboring landowners were damaged by the project despite their land not being taken. 153 Hawaiʻi 462, 493, 541 P.3d 1225, 1256 (2023) (citing 2 Proceedings of the Constitutional Convention of Hawaiʻi of 1968, at 27-31 (1973), and City & Cnty. of Honolulu v. Market Place, Ltd., 55 Haw. 226, 230-31, 517 P.2d 7, 12-13 (1973)).

> The People of Hawaiʻi added the phrase "or damaged" to the Hawaiʻi Constitution in 1968 following the construction of the H-1 freeway to provide remedies for property owners whose property lost value or usefulness although no physical taking was executed.  The Framers of the 1968 Constitution considered such effects as they relate to highway construction in adding the "or damaged" provision to the constitution.  See 2 Proceedings of the Constitutional Convention of Hawaiʻi of 1968, at 27-31 (1973).

Id.

Nothing in Standing Committee Report No. 55 suggests that the inclusion of "or damaged" contemplated a waiver of

sovereign immunity for attorneys' fees. Instead, Standing Committee Report No. 55 is clear: consequential damages from depreciation of a property's value were to be recoverable. Stand. Comm. Rep. No. 55, in 1 <u>Proceedings of the Constitutional Convention of Hawaiʻi of 1968</u>, at 236 (1973) ("Your Committee finds that loss by damage to private property for public use is no less real than loss by taking of private property for public use. The amendment seeks to cure this inequity[.]").

Furthermore, Standing Committee Report No. 55 gave examples of three types of damages that were not covered under article I, section 18 as it then provided,[15] but that would be under the "or damaged" language of the amended Takings Clause: (1) damage from the termination of a tenant's occupancy when a building is condemned; (2) architectural plans rendered worthless following condemnation of a property; and (3) damage from sporadic flooding resulting from inadequate storm drainage. <u>Id.</u> at 235. Nothing in these examples supports a conclusion that "or damaged" was intended or understood to permit recovery of attorneys' fees in inverse condemnation cases.

---

[15]     Article I, section 18 was renumbered article I, section 20 following the 1978 Constitutional Convention.

Similarly, nothing in Committee of the Whole Report No. 15 suggests the amendment adding "or damaged" extended the waiver of sovereign immunity to include attorneys' fees. Committee of the Whole Report No. 15 relied on Rigney v. City of Chicago, which interpreted the first-of-its-kind inclusion of "or damaged" in the Illinois Constitution to permit recovery for the diminution in value in property without requiring actual, physical damage to the property.[16]  102 Ill. 64, 78 (Ill. 1881). However, nothing in Rigney, or Committee of the Whole Report No. 15, suggests waiver of sovereign immunity that would include attorneys' fees.

Instead, read together, the legislative history of the 1968 amendment shows that the building of the H-1 was top of mind at the 1968 Constitutional Convention.  "[O]r damaged" certainly encompasses a broader range of situations meriting just compensation than had been previously contemplated, and its

---

[16]    Although the Committee of the Whole relied on Rigney, it noted:

> The established body of law will be helpful and will provide guidance to our courts; however, it is not your Committee's intent that our courts be bound by each precedent in every case.  It should also be noted that it is not the intent of your Committee that our courts be guided or controlled in any way by the several specific examples [citing 4 Nichols, Eminent Domain] mentioned on page 8 of Standing Committee Report No. 55 and in the debates of your Committee of the Whole.

Comm. of the Whole Rep. No. 15, in 1 Proceedings of the Constitutional Convention of Hawaiʻi of 1968, at 357.

inclusion was clearly intended to remedy the perceived inadequacies of our then-existing Takings Clause.  Nevertheless, nothing from the proceedings indicates that attorneys' fees would be recoverable.  "[O]r damaged" merely allows for just compensation for property damage caused by government actions that do not rise to the level of a taking, such as diminution in value.  Stand. Comm. Rep. No. 55, in 1 Proceedings of the Constitutional Convention of Hawaiʻi of 1968, at 236-37.

Legislative action contemporaneous to the 1968 Constitutional Convention confirms our interpretation that the 1968 amendment did not waive sovereign immunity in inverse condemnation cases.  In 1971, only three years after the 1968 Constitution was ratified, the legislature enacted Act 32, "Relating to the Acquisition of Real Property by the State for Use in any Project or Program in which Federal or Federal-Aid Funds are Used."  1971 Haw. Sess. Laws. Act 32, at 33-36. Section 4 of Act 32, codified as HRS § 113-4 (2012), allows inverse condemnation plaintiffs to recover "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees."[17]  The scope of waiver under HRS

_____

[17]    As enacted in 1971, HRS § 113-4, "Proceeding by owner," provided,

Where an inverse condemnation proceeding is
instituted by the owner of any right, title or interest in
(. . . continued)

§ 113-4 is limited to those owners whose property is taken for use "in any program or project in which federal or federal-aid funds are used." That the legislature explicitly provided for attorneys' fees in these circumstances, but not others, supports the view that "or damaged" was not intended to waive sovereign immunity in all inverse condemnation cases. And as we have previously recognized, "it is not a court's right to extend the waiver of sovereign immunity more broadly than has been directed by the legislature." Kaleikini v. Yoshioka, 129 Hawaiʻi 454, 467, 304 P.3d 252, 265 (2013).

The passage of Act 32 in 1971 supports our conclusion that sovereign immunity was not waived in inverse condemnation cases. Act 32 was specifically enacted to bring state law into compliance with the requirements of Title III of Public Law 91-646, the Uniform Relocation Assistance and Real Property

---

real property because of use of his property in any program or project in which federal or federal-aid funds are used, the court, rendering a judgment for the plaintiff in such proceeding and awarding compensation for the taking of property, or the State's attorney effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as part of such judgment or settlement, such sums as will, in the opinion of the court or the State's attorney, reimburse such plaintiff for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of such proceeding.

HRS § 113-4 was amended in 1984 by replacing the word "his" in the first instance with "the owner's" and in the second instance with "the plaintiff's."

32

Acquisition Policies Act of 1970 (the Uniform Act).  H. Stand. Comm. Rep. No. 307, in 1971 House Journal, at 833.  Section 305 of the Uniform Act prohibited federal agencies from funding any state program absent assurance that state land acquisition policies would align with the policies set forth in the act. Pub. L. No. 91-646, § 305, 84 Stat. 1906-07 (1971) (codified at 42 U.S.C. § 4655).  This included the policy that property owners in certain circumstances be reimbursed for their litigation expenses, including reasonable attorneys' fees.  Pub. L. No. 91-646, § 304, 84 Stat. 1906 (codified at 42 U.S.C. § 4644).  Compliance with federal policy was of particular concern to the Hawaiʻi state legislature in 1971, as it expected to receive $58 million in federal-aid highway funds that year to fund the State's construction of the H-2 freeway.  H. Stand. Comm. Rep. No. 307, in 1971 House Journal, at 833.

Had article I, section 20 already waived sovereign immunity for inverse condemnation cases, no legislative action would have been required to comply with the Uniform Act. Accordingly, the enactment of Act 32 suggests that the legislature did not understand our Takings Clause as waiving sovereign immunity for attorneys' fees.  This understanding that attorneys' fees in inverse condemnation proceedings were not payable under then-existing state law is confirmed in the

legislative history of Act 32.  Id. ("[P]roperty owners will be paid or reimbursed for necessary expenses incidental to transfer of title to the state and certain litigation expenses, not now payable under existing state laws.").  House Standing Committee Report No. 307 expressly reflects the legislature's understanding that attorney fees and other incidental costs were "not included as payment of 'just compensation' under the present law."  Id. at 832.  Again, this was only three years after our Takings Clause was amended.  Given the proximity in time between the "or damaged" amendment and Act 32, we credit this subsequent action by the legislature as informative as to the scope of the waiver in our Takings Clause in the wake of the 1968 Constitutional Convention.  Cf. Cnty. of Hawaiʻi v. Ala Loop Homeowners, 123 Hawaiʻi 391, 410, 235 P.3d 1103, 1122 (2010) (crediting the legislature's post-hoc interpretation of art. XI, § 9 in determining that the statute at issue was a law relating to environmental quality).

Our interpretation of "or damaged" is also consistent with the approaches adopted by other states.  Research by this court found no states that have interpreted their "or damaged" clause as waiving sovereign immunity for attorneys' fees in inverse condemnation cases.  Indeed, we are only aware of a single state, Montana, that authorizes an award of attorneys'

fees in such cases.[18]  See Wohl v. City of Missoula, 300 P.3d 1119, 1137 (Mont. 2013).  However, unlike Hawaiʻi, Montana's Takings Clause expressly requires the award of litigation expenses.  Mont. Const. art. II, § 29 ("Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner.  In the event of litigation, just compensation shall include necessary expenses of litigation to be awarded by the court when the private property owner prevails.").

Instead, those states that do permit recovery of attorneys' fees do so under express statutory authority, regardless of whether the constitution includes an "or damaged" clause or not.  For example, article I, section 19 of California's constitution includes an "or damaged" clause similar to ours: "Private property may be taken or damaged for a public use and only when just compensation, ascertained by a

---

[18]    Although the Florda Supreme Court concluded in Jacksonville Expressway Authority v. Henry G. Du Pree Co., 108 So.2d 289, 294 (Fla. 1959), that then article XVI, section 29 of the Florida Constitution (renumbered article X, section 6(a) in 1986), which requires "full compensation," not "just compensation," for a taking, allows recovery of attorneys' fees where a landowner successfully defends a taking on appeal, the Florida legislature had already acted to permit the award of attorneys' fees in takings cases by statute.  See also Fla. Dep't of Agric. & Consumer Servs. v. Bogorff, 132 So.3d 249, 253 (Fla. Dist. Ct. App. 2013) ("Because the right to fees in an eminent domain proceeding is statutory, fees awarded in an inverse condemnation also must be determined within the statutory framework.").

jury unless waived, has first been paid to, or into court for, the owner."  Nonetheless, § 1036 of the California Code of Civil Procedure (as amended in 1995) specifically provides for attorneys' fees and costs in inverse condemnation cases:

> In any inverse condemnation proceeding, the court rendering judgment for the plaintiff by awarding compensation . . . shall determine and award or allow for the plaintiff, as a part of that judgment or settlement, a sum that will, in the opinion of the court, reimburse the plaintiff's reasonable costs . . . including reasonable attorney, appraisal, and engineering fees, actually incurred because of that proceeding in the trial court or in any appellate proceeding in which the plaintiff prevails on any issue in that proceeding.

Presumably, this provision would not be required if attorneys' fees were contemplated by California's "or damaged" clause.

In the absence of a statutory provision authorizing attorneys' fees, no court has concluded that "just compensation" amounts to a waiver of sovereign immunity in inverse condemnation cases.  See 8A Nichols, Eminent Domain § G15.02[3]. For example, in State ex rel. New Wen, Inc. v. Marchbanks, 167 N.E.3d 934, 937-38 (Ohio 2020), the Ohio Supreme Court declined to hold that a statute similar to HRS § 113-4 extended to an inverse condemnation action absent federal involvement; Ohio does not have "or damaged" language in their constitution. Similarly, in DeKalb County v. Trustees, Decatur Lodge No. 1602, B.P.O. Elks, the Georgia Supreme Court held that the Georgia constitution's taking clause, which includes an "or damaged"

clause and which provides that the "General Assembly may provide by law for the payment of . . . attorneys' fees," does not require the award of attorneys' fees, and further holding that it "is a matter for legislative determination."  251 S.E.2d 243, 244 (Ga. 1978) (quoting Ga. Const. Art. I, § 3 para. 1(d)).

Because waiver of sovereign immunity requires a "clear relinquishment," Kahoʻohanohano, 114 Hawaiʻi at 336, 162 P.3d at 730, we conclude that article I, section 20's waiver for sovereign immunity for "just compensation" does not extend to attorneys' fees.  The legislative history of the "or damaged" clause and persuasive authority from other states lead us to conclude that permitting attorneys' fees here is something for the legislature – and not this court - to provide.  Our reasoning in Allen v. City & County of Honolulu, a regulatory takings case, is apt here: "it seems a usurpation of legislative power for a court to force compensation."  See 58 Haw. 432, 438, 571 P.2d 328, 331 (1977) (quoting Fulham & Scharf, Inverse Condemnation: Its Availability in Challenging the Validity of a Zoning Ordinance, 26 Stan. L. Rev. 1439, 1450-51 (1974)).  Consistent with our caselaw, we hold that the Ohanas are barred by sovereign immunity from seeking attorneys' fees against the State under the private attorney general doctrine.

## V.  CONCLUSION

For the foregoing reasons, we affirm the Intermediate Court of Appeals' April 15, 2024, Judgment on Appeal.  The circuit court's October 2, 2019, Order Denying Plaintiff's Motion Regarding Attorneys' Fees and Costs Pursuant to the Private Attorney General Doctrine, filed March 27, 2019, is also affirmed.

Paul Alston
Claire Wong Black
for petitioners

Lauren K. Chun
for respondent

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Vladimir P. Devens

/s/ Jordon J. Kimura

38